(84 South. 589)

No. 23848.

**STATE v. MORGAN.***

(April 5, 1920. On Application for Rehearing, May 3, 1920.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬅142—Change of venue not reviewable by court of parish to which case transferred.**

District court of parish to which case had been transferred had no authority to review

----

*Certiorari denied 253 U. S. 498, 40 Sup. Ct. 588, 64 L. Ed. —.

action of court of other parish in changing the venue thereto.

**2. Criminal law ⬅122—Refusal of second change of venue held proper.**

Under Rev. St. § 1025, refusal of court to which case has been transferred to grant a change of venue *held* proper, since a case cannot be transferred a second time.

**3. Criminal law ⬅141—Irregularities in transmission of documents held not to affect jurisdiction.**

In view of Rev. St. § 1024, irregularities in the transmission of documents from one court to the other on change of venue, in failure of clerk of court to which case is transferred to have filed papers when received by him, did not affect jurisdiction of such court, where the documents were in fact transferred and were in the record at the time of the trial, and where defendant was personally present during time of trial.

**4. Criminal law ⬅1166(9)—Refusal of continuance for absence of witnesses held harmless.**

Refusal of continuance for absence of defendant's witnesses was not prejudicial to defendant, where the state admitted that the absent witnesses would testify as claimed by defendant, where the trial lasted more than 10 days, during which more than 70 witnesses testified, and where defendant closed his case without objection or request for further time or for process of court to obtain other witnesses.

**5. Jury ⬅107—Jurors held competent in view of voir dire examination as to attitude toward burden of proof.**

Jurors who stated on voir dire that they would not acquit unless defendant had proved himself innocent, but who on being told of presumption of innocence stated they would act thereon and require state to establish guilt, *held* competent.

**6. Jury ⬅83(3)—Juror serving papers for sheriff held not disqualified, though chief deputy is relative of deceased's wife.**

In murder prosecution, juror who was not connected with the sheriff's office, but merely served such papers as the sheriff sent him by mail, and who was not related to deceased or his family or to the chief deputy sheriff, was not disqualified merely because the chief deputy sheriff was a relative of deceased's wife.

**7. Jury ⟨key⟩131(8)—Question on voir dire as to conviction on circumstantial evidence held proper.**

Where the evidence to be introduced by the state consisted of both circumstantial and direct evidence, question to jury on voir dire, "Have you any bias or prejudice against conviction on circumstantial evidence," *held* proper.

**8. Criminal law ⟨key⟩1039—Alleged misconduct of jurors not objected to will not be considered.**

Alleged misconduct in permitting accepted jurors during selection of jury to go to a toilet accompanied by sheriff, who remained outside of toilet room, will not be considered on appeal, where there was no ruling by the court because of defendant's failure to object.

**9. Criminal law ⟨key⟩867—Permitting accepted jurors to go to toilet during selection of jury held not ground for mistrial.**

That two accepted jurors and six unexamined jurors were permitted, during selection of jury, to go to toilet in an adjoining room accompanied by the sheriff, who remained outside of toilet room, was not sufficient ground for entry of mistrial, where jurors remained in toilet room less than five minutes, where the two accepted jurors during such time had no access to anybody except the six unexamined jurors, and where defendant failed to move for discharge of the jurors, even after court had offered to discharge them and select new ones in their place.

**10. Witnesses ⟨key⟩192—Defendant's letter to wife in hands of another to whom wife voluntarily handed it held not privileged.**

Where defendant's letter to his wife had been voluntarily handed by the wife to the sheriff, who was a witness under examination, evidence concerning the letter, and the letter itself, were admissible and not privileged; notwithstanding Act No. 157 of 1916, providing that communications between husband and wife are privileged.

**11. Criminal law ⟨key⟩338(7)—Irrelevant evidence held not objectionable on ground that it aroused race prejudice.**

In prosecution of negro for murder of sheriff, admission of evidence as to the sheriff and a deputy going to a house in which defendant and a number of other negroes were making a noise, and as to the conversation that ensued, *held* not objectionable on ground that it aroused race prejudice.

**12. Homicide ⟨key⟩156(2), 166(1)—Defendant's declarations held competent to prove motive and intent.**

In prosecution for murder of sheriff, evidence as to a conversation between witness and accused during the evening of the homicide at a time when accused was in possession of whisky in violation of law, during which conversation accused stated that he had a pistol and would kill the sheriff before he would submit to arrest for having possession of whisky, *held* competent to prove motive and intent.

**13. Witnesses ⟨key⟩344(2)—District attorney's question as to whether witness had not run off with another man's wife held improper.**

District attorney's question to a witness as to whether witness had not run off with another man's wife, where not material to the case, *held* improper.

**14. Criminal law ⟨key⟩1170½(3), 1171(3)—Misconduct of prosecutor held harmless.**

District attorney's question as to whether witness had not run off with another man's wife, which was unanswered owing to sustaining of objection, and reference thereto in remarks, *held* not prejudicial to defendant, not being material to issues of the case.

**15. Criminal law ⟨key⟩719(1)—Whether counsel fails to confine himself to the facts is a question in court's discretion.**

Whether counsel in argument to jury fails to confine himself to the facts in the record is largely within discretion of trial judge, who should be prompt to rebuke unwarranted statements.

**16. Criminal law ⟨key⟩1045—Question on which no ruling has been invoked not reviewable.**

Question on which no ruling of the court has been invoked is not reviewable.

Provosty, J., dissenting.

### On Application for Rehearing.

**17. Criminal law ⟨key⟩304(16)—Judicial notice taken of transcript on former appeal.**

Supreme Court will take judicial notice of a transcript of appeal on a former appeal.

**18. Criminal law ⟨key⟩1144(19)—Brief presumed to contain all points to be raised.**

It will be assumed that brief contained all that counsel desired to say by way of attack upon the conviction, and sentence appealed from.

**19. Criminal law ⟨key⟩1104(3)—Appellant must not bring appeal before the court with imperfect transcript.**

Appellant has the obligation of bringing his appeal properly before the court and not by means of an imperfect transcript.

Appeal from Fifth Judicial District Court, Parish of Jackson; Cas. Moss, Judge.

Pete Morgan was convicted of murder, and he appeals. Affirmed.

See, also, 145 La. 585, 82 South. 711.

Allan Sholars, of Monroe, R. E. Milling, of New Orleans, John B. Roberts, of Colfax, and Wm. J. Hammon, of Jonesboro, for appellant.

A. V. Coco, Atty. Gen., Julius T. Long, Dist. Atty., of Winnfield (Thomas S. Price, of Ruston, and T. S. Walmsley, of New Orleans, of counsel), for the State.

SOMMERVILLE, J. Pete Morgan, charged with the murder of Ernest Howell, sheriff of Winn parish, has been tried three times, and he has been found guilty without capital punishment twice. He now prosecutes this, the third appeal, from the verdict and sentence.

Morgan first went to trial in the parish of Winn, when a mistrial was entered. The defendant then moved for a change of venue, which was denied. He went to trial a second time, and there was a second mistrial entered. The state then moved for a change of venue to the adjoining parish of Jackson, the only other parish in the judicial district. The change was ordered, and defendant was there tried and found guilty. On appeal, the judgment of the district court was reversed, and the case was remanded to the parish of Winn, for the purpose of taking evidence on behalf of the defendant going to show that the venue should not have been changed from Winn to Jackson. 142 La. 755, 77 South. 588.

The motion for a change of venue was again heard, evidence was submitted by de-

fendant, and the venue was again ordered changed to the parish of Jackson, where the second trial and conviction were had. On appeal that judgment was set aside, and the case was remanded to Jackson parish for the reason that, in the opinion of the court, the trial had not been entirely impartial, and that defendant might have been prejudiced thereby. 145 La. 585, 82 South. 711.

The transcript of the third trial is now before us for consideration, and it contains 52 bills of exceptions reserved by the defendant during the course of the trial.

Defendant objected to going to trial in the parish of Jackson, alleging that the court was without jurisdiction; that the case had not been regularly transferred from Winn to Jackson; that the papers in the case transferred from Winn had not been regularly filed by the clerk of the court of Jackson, and that the prisoner was not detained under a regular commitment addressed to the sheriff of the parish of Jackson; that the order granting a change of venue from Winn to Jackson did not become operative until the papers in the case and the prisoner were transferred to the new jurisdiction—and he asked for a change of venue from the parish of Jackson, or that the case be remanded to the parish of Winn for trial. Six bills of exceptions were reserved to the rulings of the court on these various points.

[1, 2] The district court of the parish of Jackson was without authority to review the action of the court of Winn parish in changing the venue from that parish to Jackson. It was not sitting as an appellate court in the matter, and it was without right to remand the case under any consideration. The judge properly refused defendant the right to move for a change of venue from Jackson, as the law provides that a case shall not be a second time removed under any pretense whatsoever. R. S. § 1025.

There is attached to these bills the testi-

mony of fourteen witnesses taken by defendant for the purpose of showing that he could not get a fair and impartial trial in Jackson parish. This evidence was fully considered on the last trial of the case (145 La. 585, 82 South. 711), and it was there and then decided that that evidence, taken together with that introduced on behalf of the state, conclusively showed that a fair and impartial trial might be had in the parish of Jackson. The order changing the venue from Winn to Jackson was finally approved. For the reasons given by the court in the judgment in the case at that time, the order for a change of venue is declared to be valid and binding.

In the opinion of the court just referred to, it was found that the case had been properly transferred to Jackson parish, and that the court of that parish had jurisdiction of the case, and that the court of Winn did not have jurisdiction. It was further ordered therein that the case be remanded to Jackson parish for this, the third trial. It is rather late for defendant to be objecting to the jurisdiction of the court of Jackson because of alleged irregularities on the trial of the motion for a change of venue, or that the papers in the case and the prisoner had not been regularly transferred to that court. He had been tried in that parish on two former occasions, and had been convicted, and he was present throughout those trials; and all the papers in the case were also there. After the first trial, and the case had been remanded to Winn for the purpose of trying the motion for a change of venue, all the papers were returned by the clerk of the district court of Jackson to the clerk of the Winn parish court; but, when the change of venue to Jackson parish had been ordered a second time, the papers were again sent to Jackson, together with the prisoner, who was present during the three different trials. It may be that the clerk of the court of Jack-

son did not file each document when it was received on the first, or on the second, occasion. They were received by him, and are in his custody now; except some few, unimportant, papers, which were brought up to the Supreme Court under a writ of subpœna duces tecum applied for and obtained by the defendant himself. These papers appear to be in the record of the court at this time, and were not in the record of the district court on the day of the trial; but they could have been easily obtained had they been found to be necessary.

It would have been in better form for the clerk of the Jackson parish court to have regularly filed the papers when they were received by him, but the law does not directly say that this shall be done. Section 1024, R. S., is as follows:

"Whenever a change of venue shall have been awarded in a criminal case, it shall be the duty of the clerk of the court in which the case is pending, to make out a descriptive list of the indictment, pleas, and all other documents relating to such cause, and a copy of all orders which may have been entered on the minutes of the court, and to deliver the same, together with the original indictment and other papers appertaining to the cause, to the sheriff of his parish, whose duty it shall be * * * to deliver or forward the same to the clerk of the parish to which the cause shall have been removed; and for his services in so doing, the sheriff shall receive a compensation from the treasury of his parish, to be fixed and ordered by the district judge."

[3] So that, while there may have been some irregularities in the transmission of the documents from one court to the other, the fact is that the documents were transferred and were in the record at the time of the trial, and defendant was personally present during the time of the trial. There is no merit in any of these bills of exceptions, and the rulings complained of are approved.

Bills 7, 8, 9, 10, 11, and 12: The defendant objected to going to trial on October 14 when the case was called for the reason that it

had not been regularly fixed for that day the same having been fixed for the day before, October 13, and as some of his witnesses who had been summoned were absent, and he asked for a continuance of the trial.

The minutes show that the case was regularly fixed for trial on October 13, and that it was called on that day, when defendant objected to going to trial because it was a legal holiday. His objection was overruled, and he then filed a motion to remand the case to Winn parish, and the other motions hereinbefore discussed. The minutes of October 13 further show that the motion to remand the case was taken up and tried, "and the trial of the same was continued until 5 o'clock p. m., and the court adjourned until 7:30 p. m. At 7:30 p. m. court reconvened and trial resumed and continued until 10 o'clock p. m., when trial was continued until tomorrow morning at 9 o'clock." They further show that, on October 14, to which day the trial had been continued from the day before, other motions filed by defendant were taken up and disposed of; and that the state again announced itself ready for trial, when the defendant objected to going to trial on the ground that the case was fixed for yesterday and had not been refixed for to-day. The district attorney then asked that the case be refixed for that day, and the defendant objected to such refixing for the reason that his witnesses were not then present; defendant also refused to go to trial until returns were made on the writs of attachment and summonses issued for his absent witnesses—which objections were overruled. Defendant thereupon asked for a continuance because of the absence of seven of his witnesses, and, upon his stating what he expected to prove by them, the district attorney admitted that if they were present in court they would testify in the manner indicated; and the trial was proceeded with.

The court, in its per curiam, states that he refused the continuance of the case for the reason that the case was regularly fixed for October 13, taken up on that day, and the day was consumed by the trial of the several motions made by the defendant, which trial extended until 11 o'clock on the following day, October 14, when, the motions having been disposed of, and the state announcing itself ready for trial, the trial was ordered to be proceeded with. He states that no witnesses had been discharged or permitted to return home. The judge further states that the trial of the case was begun on October 13, and was concluded and submitted to the jury on October 24; that attachments were issued immediately for all of those witnesses for the defendant who had been served personally; that other summonses had been issued for those who had been served domiciliarily; that there was one witness who was not found by the sheriff, and, upon second inquiry being made at the residence given by the defendant, the said witness was not found; that the attachments for absent witnesses were served and returns made before defendant began offering his evidence; that six of such witnesses testified on the trial, and two others were shown to be ill and confined to their beds; that the other witnesses mentioned could not be found or were not wanted; that defendant closed his case without objection and without asking for further time, and for further process of court to obtain the evidence of any of the witnesses not present; that the case was on trial for more than ten days; that there were more than 70 witnesses; and that, had defendant objected to closing his evidence without the presence of any witness, the court would have used the further process of the court and obtained the presence of any of the witnesses wanted.

[4] It is thus made to appear that defendant had all the witnesses present, and ex-

amined them, whom he wished to examine or whom he wanted present, and that no prejudice was done by the ruling of the court in refusing a continuance of the trial of the case.

Bills 13, 18, and 21: These bills relate to challenges to jurors Womack, Conn, and Bryant (who were excused and did not sit). The jurors Womack and Conn answered in a way to indicate that they had prejudices against a negro who might be charged with having killed a white man, which would have disqualified them, if, upon further examination, it was not shown that they did not comprehend the questions addressed to them, and that they did not have such prejudice as to unfit them for jury service. The juror Womack testified on his voir dire that he did not know the defendant or the deceased, that he had not read of the crime, that he knew nothing about it, that he had no prejudice against negroes, and that he would be just as fair and impartial if taken as a juror in this case as if it were a white man who had killed another white man; all in answers to questions propounded by defendant's counsel. When the latter asked him the question, "Now, if you were taken as a juror in this case and the evidence failed to convince you beyond a reasonable doubt that Pete Morgan was guilty, would you have any hesitancy in voting to acquit him?" He answered:

"Not if the defendant was to prove that he wasn't guilty. Q. You mean by that that there would have to be witnesses whom you would believe, of course, to prove to your satisfaction that the defendant didn't kill Mr. Howell before you would turn him loose? You say that you would not hesitate to turn him loose if it was proved that he was not guilty. That was what you said, wasn't it? A. If I understand you, if he was proved not guilty. Q. My original question to you was, if you would hesitate to turn him loose if the evidence failed to prove beyond a reasonable doubt that he was guilty. And you answered that you would not hesitate to turn him loose if it was proved

that he was not guilty. What I mean is, would you require him to prove that he was innocent before you would turn him loose? A. Yes, sir."

These long questions appear to have confused the juror, for when the court explained to him that the law presumed every man innocent until his guilt was proved, the court asked him: "Would you require the state to establish his guilt before you would expect him to offer any proof at all?" and he answered, "Yes, sir." And again, "And, if taken as a juror you would act on that presumption that the state would first have to establish by legal testimony that the accused was guilty before you would require him to offer any proof at all?" and he answered again, "Yes, sir."

[5] The juror was competent to serve, and the court was correct in so ruling.

It was pretty much the same with reference to the juror Conn. He had not known the deceased or the prisoner or their friends; he had not heard the case discussed in detail, had heard none of the witnesses talk about it, had formed no opinion on the matter, had no prejudices against negroes; and he would expect the state to make out its case of guilt against the accused before he would agree to a conviction. After further lengthy examination by counsel for defendant, he was asked and he answered questions in the following manner:

"Q. He (the prisoner) would have to have sufficient evidence that he was innocent? A. Yes, sir. Q. And if he did not produce such evidence, you would convict him? A. Well, if the evidence wasn't sufficient to show that he was not guilty, I would have to. Q. In other words, you have got that kind of feeling against a negro who is charged with killing a white man that he would have to show that he was not guilty? A. Yes, sir."

The court then explained to the juror the law with reference to the presumed innocence of all accused persons until they were

proved guilty, and asked him questions which he answered as follows:

"Q. Would you expect the state first to establish by legal evidence his guilt before you would convict? A. Yes, sir. Q. You wouldn't expect the accused to offer any evidence until the state first established his guilt? A. No, sir. Q. Now, are your feelings any greater toward the negro who is charged with crime than they would be toward the white man? A. No, sir. Q. In other words, you hold no prejudice that would demand any greater amount of proof on the part of the negro than you would for a white man? A. No, sir."

The ruling of the court in declaring the juror competent was correct.

Bill No. 16 was reserved to the ruling of the court declaring that one Sherrard was a competent juror. Defendant objected to the juror on the ground that he was a deputy sheriff of the parish of Jackson, serving under a relative of the wife of the deceased, who was the chief deputy sheriff. Counsel admits that this is not a sufficient ground of disqualification, and there is no merit in the bill.

[6] The examination of the juror on his voir dire is not attached to and made part of the bill; but the court, in its per curiam, fully stated the conditions. He said:

"W. M. Sherrard was not related to the family of the deceased, or to the deceased, or to the deputy sheriff, J. M. Shows. He was not connected with the court, or the office of the sheriff of the parish of Jackson. He called himself precinct deputy and served such papers as the sheriff sent him by mail. He did not serve any papers in connection with the Pete Morgan case. He was not disqualified as a juror as disclosed from his examination?"

The finding of the district judge was correct.

Bill 17: This bill was reserved to the question propounded by the district attorney to a juror on his voir dire, the question being: "Have you any bias or prejudice against conviction on circumstantial evidence?" Counsel for defendant contended that the question was improperly framed, and should have been: "Would you convict on circumstantial evidence alone?" The objection was overruled, and a bill was reserved.

[7] It would appear that while the case of the state was made up, in part, of circumstantial evidence, there was also some testimonial proof to be offered on the trial, and the district attorney did not restrict his question to the introduction of circumstantial evidence alone, for that reason. Under the circumstances, we think that the question in either form was proper. Had the district attorney used the form suggested by counsel for the defendant, the state would not have been precluded from offering evidence of that character alone. If, as contended for by the district attorney, circumstantial evidence was to be offered in connection with other legal evidence, it was competent for him to ask the juror the question as he framed it. State v. Jackson, 42 La. Ann. 1170, 8 South. 297; State v. Stewart, 45 La. Ann. 1164, 14 South. 143; State v. Nash, 46 La. Ann. 194, 14 South. 607; State v. Compagnet, 48 La. Ann. 1470, 21 South. 46; Marr's Crim. Jurisprudence, p. 525.

The juror did not state that he was opposed to conviction on circumstantial evidence when connected and sufficient. He might have been opposed to conviction on slight circumstantial evidence which raised reasonable doubts as to guilt, just as he might have been opposed to conviction on any other evidence not conclusive to a reasonable mind. The ruling of the court in sustaining the objection to the juror for cause, even if erroneous, was not prejudicial to the accused in any way, if error there was; and if there was error it was of so slight a nature as not to be sufficient to cause reversal of the judgment appealed from.

Bills 19 and 20: These bills were taken to the questions of the district attorney of the

two jurors mentioned therein when he, the district attorney, adopted the form of question just referred to as having been suggested by counsel for the defendant; the objection, at this time, being that the state was not depending upon circumstantial evidence alone, and therefore had no right to ask the question. The point has no merit for the reasons suggested above.

[8] Bill No. 14: This bill recites the fact that twelve jurors had been called to the jury box; three had been examined and excused; two jurors had been accepted; and that, while the sixth juror was undergoing examination, one of the remaining six asked to be permitted to go to the toilet, which was in the jury room adjoining the jury box; that he, together with the unexamined jurors and with the two who had been accepted, were taken by the sheriff into the adjoining room into which room the toilet was, and left in there together for about five minutes, with the sheriff on the outside of the door of the room. No objection was made by the accused at the time that the jurors were permitted to leave the courtroom, but he now claims that there was misconduct on the part of the two jurors who had been examined and who served on the jury. As no objection had been made, there was no ruling of the court, and there is nothing before this court to be considered.

Bills Nos. 15 and 22: These two bills are based on the incident of alleged misconduct set forth in bill No. 14. The first bill was taken when counsel for defendant moved the court and requested that the jury be discharged and that a mistrial be entered in the case, which motion was refused; and the second bill was taken after the jury had been completed, and defendant had exhausted all of his peremptory challenges, when he renewed his motion that a mistrial be entered and the jury be discharged, which the court refused to do.

The court, in its per curiam, after reciting the facts hereinbefore stated, with reference to the jurors who had been charged with misconduct, stated that the alleged misconduct was not misconduct for the reason that the request of the juror to retire to the toilet was granted by the court in the presence of the accused who made no objection, and that the two accepted jurors together with the other six unsworn jurors who retired to the toilet, in the jury room, which adjoined the jury box, were in charge of the sheriff, who remained on the outside of the door of the jury room; and that said jurors were not gone out of the courtroom for more than five minutes.

[9] It is not suggested that these two jurors had access to anybody in the courthouse or on the outside, except the six unexamined jurors who were with them in the jury box at the time of the occurrence. Under such circumstances, we do not think that the alleged misconduct constituted sufficient cause for the judge to have entered a mistrial of the case. They were accessible to the six unsworn jurors it is true; but for a very short space of time, and, virtually, under the very eye of the court. Misconduct cannot be presumed under such circumstances.

Besides, the trial judge says that, on objection being made to the alleged misconduct of the two jurors, he, the judge, requested the defense to say if he wished the two jurors discharged from the case; and that, if such request was made, the court would dismiss the two jurors from the panel; and that the defense counsel answered:

"In response to your questions, we assume that the trial has been gone into, and that there should be a mistrial entered in the case and the jury discharged; and that is what we request."

The judge replied:

"The court refuses to enter an order of mistrial, but states to the accused that it is will-

ing and ready to enter an order dismissing the two jurors selected and sworn if the jurors are objectionable to the defense, and that request for their dismissal is made; which request has not been made by the defense. On the contrary, counsel have declined to make any request with reference to the jurors or to urge any objection further than that stated in the foregoing bill."

The judge further states that, on granting the request of the one juror to be excused from the courtroom, he did not observe that the other jurors who were in the jury box, excepting the one who was under examination, had retired until they were returning into the jury box, when objection was made by counsel for the defendant. He further states:

"The toilet is in the jury room, and the sheriff opened the door, and they walked in, when he stepped just outside to pull the door to shut out the view from the public, and stood there until the jury returned. The time was less than five minutes. The list of jurors who tried the case show that none of the panel who returned to the jury room were accepted on the jury with the two jurors who had already been accepted."

Again, the judge says:

"There had not been such a separation as would work injury or prejudice to the accused as was evidenced by the fact that counsel for the accused did not think so when they refused and failed to ask for a discharge of jurors Oxford and Thomas. This was the first panel called. The remaining 30 regular venire had not been called; and 75 tales jurors had been ordered, and had been drawn, and were being summoned from which a jury could have been found independent of the jurors Oxford and Thomas, since all the tales list was not exhausted. The jurors complained of did not leave the court building and were only out in the jury room less than five minutes while the sheriff was standing at the door. Court was in session during the entire time, and there being no injury and prejudice shown, and upon defendant failing to move a discharge of jurors even after the court announced it would discharge the jurors if requested, we conclude there is no injury shown."

We agree with the ruling of the district judge.

The alleged misconduct occurred before defendant was in jeopardy, by the opening of the case before the jury. There was no jury at that time; and, if there had been, and one or two jurors had become incapacitated to serve after having been sworn, they might have been excused by the court and their places filled from the panel. The bill fails to exhibit the denial of any right accruing to accused on account of some action by the court. State v. Moncla, 39 La. Ann. 868, 2 South. 814.

"The separation of the jury, in Hornsby's Case, 8 La. (Rob.) 554, was admitted; also, in Desmond's Case, 5 La. Ann. 398; and the reluctance with which we adhered, in the latter case, to the decision in Hornsby's Case, is a sufficient reason for requiring indisputable evidence of a separation which would produce effect, before affording relief on this ground." State v. Brette, 6 La. Ann. 652, 657; State v. Tucker, 10 La. Ann. 501; State v. Bullock, 136 La. 167, 66 South. 767.

"A mere showing of misconduct will not raise a presumption of prejudice unless at least a probability of prejudice appears." 16 C. J. 1225.

The accused, with his counsel, were present during the whole of the trial; and they were evidently of the opinion that the separation complained of was not sufficient to have produced prejudicial effect against the accused, or they would have asked for the discharge of the two jurors. Under the circumstances, this court is not in a position to say that there is "indisputable evidence of a separation which would produce effect."

Bills 27, 28, 29, and 30: These four bills were taken according to the per curiam of the judge, to rulings of the court in permitting evidence concerning "a letter written by the accused to his wife, and the introduction of that letter in evidence, on the ground that such evidence was irrelevant, and for the further reason that it was an attempt to vio-

late the law and right of privileged communications between husband and wife," "which letter had been deposited by the accused in the United States mail and delivered through that agency to the wife unopened, and by her received and read prior to its voluntary delivery by her to W. P. Heflin, sheriff of the parish of Winn." "That the letter was inadmissible for the reason that it was a denial of the right of privilege established by law in favor of the accused, which he did not waive, in any sense, but strongly and persistently insisted upon." Act 157, 1916, p. 379, provides that "private conversations between husband and wife shall be privileged." But, the court has not been referred to any law which makes written communications between husband and wife privileged, and they have not been so considered generally.

It has been held that—

"A letter also written confidentially by husband to wife is admissible against the husband when brought into court by a third party." Wharton's Criminal Evidence (10th Edition) pp. 815, 816. People v. Hayes, 140 N. Y. 484, 40 N. E. 951, 23 L. R. A. 830, 37 Am. St. Rep. 572; State v. Nelson, 39 Wash. 221, 81 Pac. 721; People v. Swaile, 12 Cal. App. 192, 107 Pac. 134; McNeill v. State, 117 Ark. 8, 173 S. W. 826, 1200; State v. Hoyt, 47 Conn. 518, 36 Am. Rep. 89; State v. Buffington, 20 Kan. 599, 27 Am. Rep. 193; State v. Wallace, et al., 162 N. C. 622, 78 S. E. 1, Ann. Cas. 1915B, 423; Commonwealth v. Caponi, 155 Mass. 534, 30 N. E. 82.

"While it is true that a communication between husband and wife or attorney and client is a privileged communication, yet it is privileged only while it remains within the custody and control of their agents or representatives. So on the trial of an indictment, a letter written by the defendant to his wife, but not in the custody or control of either of them, or any representative of them, but in the custody and control of the prosecuting witness, is held to be competent evidence against the defendant." 10 R. C. L. p. 1148, § 351; A. & E. Ency. vol. 23, p. 97.

"It seems that a written communication from a husband to his wife may lose its privileged character by her letting it go out of her hands. The writing is no longer confidential if both husband and wife have relinquished control over it." Underhill on Criminal Evidence, § 186.

[10] The letter had been voluntarily handed by the wife to the sheriff, who was a witness under examination, and evidence concerning same, and the letter itself, were admissible in evidence.

[11] Bills Nos. 23 and 24: These bills were taken to the testimony of Strong Shelton and P. H. Ferguson, two witnesses for the state. Objection was made to the relevancy and materiality of their testimony. A careful perusal of the same, which is attached to the bills of exceptions, fails to reveal any materiality or relevancy to the guilt of the accused. It, at the same time, failed to reveal any prejudice which may have been wrought by it to the accused. Objections thereto were overruled on the ground that the evidence might tend to prove motive and intent. We fail to appreciate how the evidence might have any effect whatever, either for or against the accused. These two witnesses testified that they, together with the deceased and a deputy sheriff, went to the house of one Green Watkins, where the accused and his brother John, together with other negroes, had assembled and were making a noise. In the interview between the deceased and the accused and his brother, the two latter offered money to the deceased for the name of any man, white or black, who had accused him of making a noise by hollering. To which the deceased sheriff appeared to have made no reply. The accused then said: "You can arrest me. You can arrest me." But the accused was not arrested at that time, and no charge whatever was made against him.

Counsel for defendant argues that this testimony was calculated to prejudice the minds of the jurors against the defendant "because of racial difference against the accused." We fail to trace any difference on account of race or color in the testimony of

the two witnesses, which has been made the subject of these two bills.

Bill No. 25 was taken to the ruling of the court in admitting the evidence of one Elzie Jennings, a witness for the state, on the ground of irrelevancy and immateriality. It is the same evidence that was introduced on the former trials of this case, and which has been passed upon adversely to the accused in the opinions in those cases. For the reasons therein given, the ruling of the court in admitting the testimony is approved.

Bill No. 26 was taken to the ruling of the court in permitting the witness Ellis Teddlie to answer the following question: "Please tell the jury of that conversation you had with Pete Morgan."

The reference to a conversation shows that some testimony had been formerly given with reference thereto; and the bill does not contain all of the testimony of the witness. The objections of immateriality and inadmissibility were overruled, as stated in the judge's per curiam attached to the bill, for the reason that—

"It is admissible to show motive and intent, especially following the statement of Albert Guin that accused stated to him that he would kill Howell (the deceased sheriff), before he would submit to arrest, and also telling witness Arthur Bonnett, on the same evening of the homicide, that he had put Mill, deputy sheriff, back in white man's place a few days ago."

From that portion of the testimony contained in the bill of exceptions it would appear that the witness Ellis Teddlie had had a conversation with the accused on the evening of the homicide; that he, the accused, had whisky in his possession, which was against the law; and that he, the witness, had advised the accused to take $140 which he had in his pocket back to his home, "as somebody would knock him in the head and take it away from him"; and that the accused had "put his hand in his back pocket, and said he had a 41 and that was the difference between him and anybody."

147 LA.—8

[12] Taking in view the testimony of Albert Guin, referred to by the judge in his per curiam, to the effect that the accused had, on the same evening, said that he would kill Howell before he would submit to arrest for having whisky in his possession, and also telling the witness Arthur Bonnett, the same evening, that "he had put Mill, deputy sheriff, back in white man's place a few days ago," we think that the evidence was competent and admissible to prove motive and intent on the part of the accused.

Bills 31, 33 to 38, and 40 to 51, as stated on the brief for defendant, "relate to the misconduct of the district attorney; his actions are described as misconduct, because we know of no other word or expression that is more proper or fitting."

[13, 14] These numerous bills were taken to the expressions and conduct of the district attorney during the course of the trial, and when it might appear that the district attorney was being tried. Some of them are exceedingly trifling, while others contain more serious grounds of complaint. For instance, while a witness was on the stand, he was asked by the district attorney:

"I have got a question for you, Doctor. See how you will answer this. Isn't it true that you ran off with another man's wife from Indianapolis and took her to New York and lived with her there?"

Objection was made to the question on the ground that it was impertinent, impudent, and irrelevant; and the objection was sustained. The objection was well taken, and the ruling of the court thereon entirely correct. The district attorney should not have asked the witness impertinent and impudent questions, or a question which was not material to the issues of the case. And, while the question was not permitted to be answered, the district attorney nevertheless undertook to testify before the jury, without taking an oath, in face of the ruling of the court, by stating: "It is true that the wit-

ness had run away with another man's wife." Such misconduct on the part of the district attorney was degrading, without doubt, to the witness, but did not have any injurious effect upon the accused. Such conduct was better calculated to have a prejudicial effect upon the state, in the eyes of the jury, especially after the testimony had been ruled out by the court. It was, as stated by counsel for the defendant, immaterial, and it could not therefore have affected the defendant. The remark of the district attorney was made in a petulant and willful manner, and it cannot be justified.

[15] Some language used by the district attorney was quite coarse and violent, and clearly weakened the cause he was advocating; and his manner may have been oppressive and abusive of the witnesses, as well as disrespectful to the court. But, on objection being made in each instance, the jury was instructed by the court to disregard the manner and language of the district attorney. There is nothing serious in all of these bills, or sufficiently serious to warrant the court in remanding the case for another trial.

"It is impracticable, even in the Supreme Court, to confine the argument of counsel to the facts disclosed by the record as the briefs in this case will verify, and the trial judge cannot be expected to restrain counsel from occasionally soaring on the wings of imagination while addressing juries on issues involving liberty or life. Questions of this kind must in the nature of things be left largely to the discretion of the trial judges, who should be prompt to rebuke unwarranted statements from counsel for either side."

"It is usually within the discretion of the court to determine whether counsel transcends the limits of professional duty and propriety by the use of coarse and abusive language and epithets, and the exercise of this discretion will not be reviewed by an appellate court except where counsel are permitted to travel out of the record or persist in disregarding the admonitions of the trial judge, or to indulge in remarks of a material character so grossly unwarranted and improper as to be clearly injurious to the rights of the party assailed." 2 Encyclopedia of Pleading and Practice, p. 747.

"Just and fierce invectives when based upon the facts in evidence and all legitimate inferences therefrom are not discountenanced by the court." Id., p. 747.

"He (the district attorney) may argue such conclusions from the testimony as he pleases, provided he does not misquote witnesses. He may urge that the natural presumptions are against even uncontradicted testimony, and adduce an admission of crime from any ambiguous statements by the defendant. And the fact that his argument is illogical is not enough to put the court in error in refusing to arrest it upon 'request.' " Id., p. 747.

Bill No. 32 relates to a request by counsel for defendant for the production of the procès verbal of the coroner's inquest eight days after the trial of the case had begun. He knew that this document had been filed in this, the Supreme Court, attached in its original form, to one of the transcripts on a former trial of the case, and had been brought here under a subpœna duces tecum caused to be issued by defendant. This fact had also been testified to by the clerk of the court several·days before counsel for the defendant made demand for production of same. It is stated that they desired the procès verbal "for the purpose of showing by said inquest that the motive of the assassination of Mr. Ernest Howell was robbery."

Counsel could have obtained the document, or a copy thereof, if they had made demand on the state for it, or on the clerk of this court; but they did neither. We doubt if the document could have been introduced for the purpose stated. If it was to have been offered to contradict the testimony of some witness, it might have been of service to the defendant. Counsel do not allege that they did not have sufficient testimony to show that the motive of killing Howell was robbery, even if the procès verbal would have shown such to be a fact.

[16] Defendant has not argued this bill on their brief, and they have not shown diligence in getting the document if it was needed. There does not appear to have been invoked

any ruling of the court on the question; it is not therefore properly before us for review.

This third trial of the case has been long and tedious. It has been tried by competent attorneys on both sides; and the very numerous rulings of the district judge have been uniformly proper, correct, and just. While the district attorney may have, during the trial, subjected himself to some adverse criticism in the conduct of the case, we find, after a close examination of the record, that defendant had a fair and impartial trial; and that there was not any improper evidence permitted to go to the jury which could have prejudiced his cause.

The judgment appealed from is affirmed.

PROVOSTY, J., dissents.

See dissenting opinion of O'NIELL, J., 84 South. 597.

On Application for Rehearing.

PER CURIAM. Defendant has been three times convicted of murder upon the identical charge, preferred in the identical indictment which serves as the basis of the conviction that he now seeks to have annulled; the two prior convictions having been set aside for the reasons which appear in the cases as reported in 142 La. 755, 77 South. 588, and 145 La. 585, 82 South. 711. The minutes of the district court, sitting for the parish of Winn, as copied in the transcript of appeal (No. 22648 of the docket of this court), in the case first above mentioned, shows that the grand jury brought into that court a true bill of indictment, charging the defendant, Pete Morgan, with the crime of murder; and the indictment itself, as copied in the same transcript, purports to be signed by the district attorney, to bear the indorsement, "a true bill, C. M. Bevill, foreman," and to have been filed in court on November 24, 1916.

[17-19] The opinion of this court in the case reported in 145 La. 590, 82 South. 713, opens with the statement, "Defendant was indicted by the grand jury of the parish of Winn, in November, 1916, for the murder, charged to have been committed in April of that year, of Ernest Howell, a deputy sheriff," etc.; and that statement is sustained by the facts above stated and the further fact that the indictment, as above described, is also copied in the transcript of appeal in the case in which the statement is made; of all of which this court takes judicial cognizance. The indictment is also copied in the transcript in the instant case, but the indorsement is omitted. The brief filed by the zealous counsel for the defendant, upon the hearing on the merits, in the present appeal, contains no reference to the failure of the transcript to show the indictment, though the matter is mentioned in an assignment of error, one of many, written and typewritten, papers which have been filed in this court, and interest in which was merged in the brief which was assumed to contain all that counsel desired to say by way of attack upon the conviction and sentence appealed from. As the appellant in the case, the obligation rested upon defendant to bring his appeal properly before the court, and not by means of an imperfect transcript, which is the first ground alleged in his application for rehearing; there being no suggestion that defendant was not indicted, and this court being fully informed to the contrary by reason of its consideration of the case upon the former appeals, and the presence in his archives of the transcripts showing the indictment.

The other matters alleged in the application for rehearing have already been fully considered in the opinion heretofore handed down, and we find no reason for changing our opinion concerning them.

Rehearing refused.