SOMMERYILLE, J.
Defendant was convicted of murder, without capital punishment; and he relies upon 13 hills of exceptions for a reversal of the verdict and the judgment based thereon.
[1] The first, second, fifth, and sixth bills of exceptions were taken to the rulings of the court excluding testimony offered by the accused which might have had a tendency to show an interest in the prosecution by persons other than the duly constituted officials of the state and parish. It would appear from the record that there was a strike of workmen at the plant of the American Sugar Refinery, and that the deceased was killed by one of the strikers, who belonged to a labor union; and the evidence sought was to show that the witnesses for the prosecution were nonunion men, and that they were in the employ of the American Sugar Refinery. The objection on the ground of immateriality was properly sustained.
[2] The third and fourth bills were reserved to the rulings of the court in excluding evidence of the opinions of two witnesses, then under examination. Opinions are not' evidence except those of experts, and the rulings in excluding such evidence were correct.
[3] The seventh bill was taken to the ruling of the court refusing to instruct the jury, on the closing of the case by the state, to return a verdict of not guilty, for th,e reason that the state had failed to make out a case of murder against the accused as charged in *637 the indictment. The per curiam of the judge states that—
“The motion was overruled because the jury was considered to be the judge of the facts and of the law to be applied in the case, subject to the condition of the law to be given in the charge to the jury by the court; and that, therefore, it was not within the province of the court to instruct the jury to bring in a verdict of not guilty at any stage of the proceedings.”
The ruling of the court was in accord, with the Constitution and the statutes, and it is approved.
[4] The spirit of the law forbids comment upon, reference to, or allusion by the judge based upon the evidence at any stage of the trial; and any expression of opinion by the judge during the progress of the trial, made in the presence of the jury or out of their presence, is to be condemned. It is the duty of the judge to carefully abstain from any expression, both in ruling upon the admissibility of evidence and in his charge to the jury; and any clear though hasty and inadvertent expressions of opinion touching upon any material fact developed by the evidence might well be regarded as fatal to the proceedings. The judge therefore did not have the right to instruct the jury, upon the evidence produced by the state, to bring in a verdict of not guilty. State v. Alphonse, 34 La. Ann. 9; State v. Walker, 50 La. Ann. 421, 427, 23 South. 967.
And, indeed, counsel for the accused on their brief, in excepting to the ruling of the judge contained in bill of exceptions No. 8, wherein they charged that the judge had indirectly instructed the jury to bring in a qualified verdict, state the law to be as just given; averring, at the same time:
“We must say that we believe that he did not intend to prejudice the jury or to injure the defendant, but we do most emphatically insist that his language conveyed to the jury, under the circumstances in which it was given, a meaning which was prejudicial and harmful to the accused.”
In discussing the point, counsel say on their brief:
“The trial judge has no right or authority under the law of Louisiana to express an opinion, or remark, at any stage of the trial, on the general weight or general effect of the evidence in any case of felony, especially a capital case, in the presence of the trial jury, since upon him the jury wholly relies for guidance as to the law, and for such instructions as are proper, and as the law expressly forbids any comment by him on the facts or any expression of opinion, direct or indirect, on matters of fact.”
Bill No. 8 was taken to a remark made by the court to the jury, which had come into court and announced that it was unable to agree upon a verdict; to the effect that the case was a serious one, and that it was their duty, if possible, to agree upon a verdict. The case had consumed some time in its trial, and the state had been put to great trouble and expense in preparing for the trial. The defense was also entitled to a definite and early disposition of the case.
[5, 6] But no objection was made to the remark of the judge at the time of making it, and the bill of exceptions taken thereto comes too late. A bill of exceptions, to he considered by this court, must present some ruling of the trial court which was prejudicial to the accused; and that ruling must have been predicated upon an objection raised by the accused at the time of .the ruling. In this instance, there was no objection made to the remark of the judge; and, of course, there was no ruling on the point. Counsel now state that the remark of the judge admitted of the interpretation that the jury might bring in a qualified or compromise verdict. Such interpretation would be a strained one of the language used by the judge; but, if it admits of any such interpretation, then the opportunity should have been given the judge to have corrected such possible interpretation by the jurors. Not having given the judge the opportunity of *639 making the explanation which defendant now seems to say was necessary, it is too late for him to complain. State v. Morgan, 147 La. 205, 84 South. 589. And, with reference to the language used hy the judge, counsel say on their brief:
“In all candor and in justice to the judge of the lower court, we must say that we believe he did not intend to prejudice the jury or to injure the defendant.”
And we are quite fully convinced that the judge did not injure the defendant in any way by the use of the language attributed to him. ■
Bill No. 9 was taken to the overruling of a motion for a new trial, based upon several grounds, one of which was: “That the jury was permitted to separate and to sleep in separate^ rooms.”
The evidence shows that the jurors, during the course of the trial, on repairing to their room at night separated into three several groups. Seven were in .one room with the door closed, leading into a common hallway, and without a deputy sheriff; four were in' a second room, without a deputy sheriff, with a door leading into the common hallway; and the twelfth juror was in a third room, with the deputy sheriff, and the door of that room entered into the common hallway. There were no connecting doors between the three adjoining rooms. The reason given by the deputy sheriff for separating the jurors was that no one room was sufficiently large to accommodate the twelve and himself. But, under such circumstances, a deputy sheriff should have been placed in charge of the jurors in each room.
The separation of the jury was entirely contrary to the common-law manner of conducting a trial for a capital offense. The courts have lately given a liberal construction to the requirement that jurors shall not be permitted to separate in a capital case at any stage of the proceedings, or in any other | criminal trial, from the time the case is submitted until the verdict is rendered. And courts have held in cases where the jurors, though somewhat separated, were all under the eye of the judge or the sheriff, that such separation was not fatal. But this legal requirement cannot be done away with entirely ; particularly in a case where seven of the jurors were .separated from the others, four of the remainder were separated from the others, and one was separated from all the others, and he was the only one in charge of a deputy sheriff through the night. Eleven of the jurors were thus from under the eye of the deputy sheriff, and they were all entirely out of the presence of the court. In the case of State v. Moss, 47 La. Ann. 1515, 18 South. 507, the court said in part:
“The testimony shows that there was at least one well-defined separation of the jury, when the two jurors on Saturday morning were taken down to the yard, and the remaining jurors were left, unattended, in a distant part of the court building.
“There were opportunities for members of the jury remaining upstairs to communicate with persons in the court building. The jurors were accessible, and misconduct is presumed.
“The separation of the jury, as disclosed by the testimony, is fatal to the prosecution.”
And, again, in State v. Warren, 43 La. Ann. 828, 9 South. 559, the court said of the jurors:
“They were accessible; misconduct is presumed. In a capital case, separation of the jury, such as thus occurred, is fatal to the prosecution.”
And, again, in the case of State v. Walters, 135 La. 1070, 66 South. 364, the court say in part:'
“The jurors were permitted to leave the courthouse every .night and to separate and sleep at a hotel in six rooms — two in each room. The rooms were in three suites of two rooms each, with a connecting bath to each suite. The outside doors were locked, so that the three groups, of four jurors each, were entirely separated and shut off from communication with *641 one another. And they were all out of the presence, sight, and hearing of the deputy sheriff, who slept in the hall in front of the six rooms.”
And, it was there held that such separation was illegal.
Mr. Wigmore, in his work on the Law of Evidence (volume 4, § 2352, p. 2384), states the rule and gifes the history thereof as follows:
“The deliberations of a jury must he conducted with strict regard to certain formalities of conduct during retirement — formalities which, though not vital in a particular case, yet are indisputably wholesome as requirements of general policy. They are mere outward marks or conventions, but they are the more technically strict because the impossibility, under the principle already examined (ante, § 2349), of regarding jurors’ actual motives and reasonings, makes it the more necessary to depend upon the conventional canons of behavior for confidence in the verdict. Like the analogous formalities of other legal acts, already mentioned (ante, § 2348, par. e.; post, § 2456), they are not inherent logical elements, but formal marks of precaution. A particular will may have been genuine and deliberate, though not executed in the presence of attesting witnesses; but the propriety of attestation as a fixed general rule cannot be doubted. So a particular jury’s verdict may be a just and well-reasoned one, when the jurors during retirement have separated or talked with the parties or ’drunk intoxicating liquors; yet as a general rule it is proper to invalidate verdicts marked by such conduct.
“Now, the law of trials in general, and of verdicts in particular, must prescribe these requisite formalities of conduct for the jurors, and define those formalities and irregularities which per se invalidate the verdict.”
[7] The jurors having been separated into three several groups, and the sheriff during the night having been in charge of only one of these groups, misconduct is presumed. Under such circumstances, the jurors were accessible; and the separation is fatal to the prosecution.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled,, avoided, and reversed; and it is now ordered that this case be remanded for a new trial.
O’NIELL, J., concurs in the result.
DAWKINS, J., concurs in the decree.