316 So.2d 124 (1975)
STATE of Louisiana, Appellee,
v.
Hubert James SENEGAL, Appellant.
No. 55969.
Supreme Court of Louisiana.
June 23, 1975.
Larry C. Dupuis, Edwards, Stefanski & Barousse, Crowley, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Thomas Robert Shelton, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant Senegal was convicted of distribution of marijuana, La.R.S. 40:966, subd. A(1), and sentenced to ten years at hard labor. He appeals, relying upon six assignments of error.
The charge grew out of an alleged sale by Senegal of two lids (ounces) of marijuana to two undercover police officers, Allison and Thomas.
*125 The most serious contentions were advanced by Assignments of Error One and Two. They involve just a few of repeated state objection to cross-examination by the defendant of Officer Allison.
The trial court sustained all of these objections. We hold that these rulings infringed upon the accused's right to meaningful cross-examination of this prosecution witness (La.R.S. 15:273 (1966), 280 (1966), 492 (1950); State v. Giordano, 259 La. 155, 249 So.2d 558 (1971); State v. Elias, 229 La. 929, 87 So.2d 132 (1956)), and we therefore reverse.

Assignment One
La.R.S. 15:492 (1950) provides: "When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same." (Italics ours.)
Assignment One relates to cross-examination of Officer Allison by defense counsel to establish bias, interest, or corruption, a traditional method of impeachment recognized by La.R.S. 15:492, quoted above. See: State v. Lewis, 236 La. 473, 108 So. 2d 93 (1959); State v. Elias, 229 La. 929, 87 So.2d 132 (1956); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Pugh, Louisiana Evidence Law 59-61, 110-11, 134 (1974); McCormick on Evidence, Section 40 (2d ed. 1972); Pugh, 34 La.L.Rev. 538-39 (1975).
The officer had previously testified that he had been a state policeman for three and one-half years and had been assigned to undercover narcotics work. After an objection was sustained to another question intended to show possible interest the defendant then asked the state witness the following question: "Would you advise the Court how you came about being a state police narcotics agent?"
The State objected to the question as irrelevant. In the colloquy outside the presence of the jury, the defendant's counsel clearly stated that his purpose was to ascertain whether the witness was motivated by grudge or prejudice. The trial court then stated: "The Court has ruled that it [the question] was irrelevant, and from that point on, you should then ask next question and leave that area. Do we understand each other?" (Italics ours.)
The trial court erred in holding that this line of questioning was irrelevant. The authorities cited unanimously hold that the cross-examiner may question the witness as to his bias or interest (such as by the prosecution's leverage of a pending charge against him, State v. Lewis, cited above).
The State suggests that the trial court's ruling did not prohibit the defendant from asking more specific questions to develop bias, interest, or corruption, such as: "Did you enter the narcotics field because of a burning hatred for all people who might be involved in the narcotics traffic?"; "Were you induced into becoming a narcotics agent because you had been a narcotics dealer?"; "Did someone named Senegal sell your sister marijuana, impelling you to join a crusade against narcotics?" ; "Did you enter the field because, if you continue to make cases, you get a good expense account?"
Fairly construed, however, the trial court's ruling effectively cut off the defendant from any further questions to explore the "area" of questioning: any bias or interest of the state witness Allison in serving as undercover narcotics agent which might influence his perceptions or color his testimony.
The Confrontation Clause of the Sixth Amendment to the United States *126 Constitution requires that a defendant in a criminal case be allowed within traditional limits to impeach the credibility of a prosecution witness by cross-examination directed at possible bias or interest. In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L. Ed.2d 347 (1974), the United States Supreme Court so held, in a near-unanimous opinion authored by Chief Justice Burger. There, an Alaska juvenile law prohibiting disclosure of juvenile proceedings was invalidated, insofar as it prevented the defense from developing any bias or interest of a prosecution witness which might have arisen out of his probationary status as a juvenile.
In so holding, the Supreme Court held, 415 U.S. 315, 94 S.Ct. 1110, 39 L.Ed.2d 353:
"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution `to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witness physically. `Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross examination.' * * *
"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.. . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is `always relevant as discrediting the witness and affecting the weight of his testimony.' 3A Wigmore, Evidence § 940, at 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected rights of cross-examination. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)."
At Wigmore on Evidence (Chadbourn rev. 1970), the impeachment of a witness for bias, interest, or corruption is discussed at Sections 940-69. The treatise notes that the largest possible scope of cross-examination is permitted for impeachment on this ground. Section 944.
The decisions of our own jurisprudence also are generally in accord. They have generally permitted full scope of cross-examination in the interests of exposing, for jury evaluation, any bias or interest of the witness, which might influence his perceptions or color his testimony. See, e.g., State v. Chambers, 263 La. 1080, 270 So.2d 514 (1972); State v. Lewis, 236 La. 473, 108 So.2d 93 (1959); State v. Elias, 229 La. 929, 87 So.2d 132 (1956); Pugh, Louisiana Evidence Law 110-11 (1974).
Decisions suggesting that the prejudice must be personal or direct against the defendant are generally distinguishable. If not arising under special facts,[1] for the most part they concern examination as to *127 either general prejudices or special biases or interests irrelevant to or too remote from the issues of the case at trial. See, e.g., State v. Darby, 310 So.2d 547 (La.1975); State v. Howard, 230 La. 327, 88 So.2d 387 (1956); State v. Cullens, 168 La. 976, 123 So. 645 (1929).
In State v. Elias, 229 La. 929, 87 So.2d 132 (1950), we held that a substantial denial of the right to cross-examine for bias or interest cannot be regarded as harmless error, for it violates a right of confrontation fundamental to a fair trial. If we were in doubt as to reversal, however, we believe that the cumulative error represented by the above and by Assignment Two (see below) effectively denied the defendant his constitutional and statutory rights of cross-examination of the state witnesses against him.

Assignment Two
The second assignment of error is based upon the trial court's sustaining objections to questions asked by the defendant on cross-examination of Officer Allison, a chief prosecution witness. The thrust of the questioning which was curtailed was to develop whether the two state police officers had themselves or through their confidential informers instigated or induced the crime. The purpose was to develop for the jury the defense of entrapment, which justifies an acquittal if proved. See State v. Bates, 301 So.2d 619 (La.1974) and State v. Kelly, 263 La. 545, 268 So.2d 650 (1972).
The defendant is charged with having sold marijuana to the two officers. Prior to the transaction, the officers were riding in the neighborhood, together with a confidential informant (later identified in the trial, Tr. 138) and Clophas Jones. They were in search of marijuana. The officers had been introduced to Jones by the confidential informant. The thrust of the State's case is that, without the officers or the informant actually suggesting it themselves, Jones was looking for marijuana for the group.
Jones recognized a group of people at a barbecue pit on the parking lot of a nightclub. Jones had the car stop, went over to the group, and returned with a man whom the police officers identified at the trial as the defendant Senegal. Senegal then produced a lid (ounce) of marijuana for each of the officers, which they purchased at $12.00 each, the going rate.
Prior to the objected-to questions, Allison was questioned as to the purpose of his riding about with the confidential informant. He denied that the purpose of the informant was to get people to sell marijuana to him, stating that the informant's only mission was to introduce him to people in the neighborhood. He also denied that the informant knew the reason why the undercover policemen wanted to be introduced to people.
Then follows the series of questions to which the objection was sustained:
"Q. [If the informant does not know why he is riding with you,] What is the purposeconfidential informant, what does that mean? That he is someone that says what? * * *
"What did you discuss with the people that this informant introduced you to? * * *
"Was Mr. Jones an informer? * * *
"Was Mr. Jones paid anything?"
The trial court sustained objections to these questions as being immaterial and irrelevant.
Even aside from the denial of latitude permitted on cross-examination, the ruling was erroneous. The questions were *128 designed to elicit information as to whether Jones was a paid state informer and as to whether he or the known informer working for the State had induced or instigated the sale. The information sought was plainly relevant to establish or negate the defense of entrapment. La.R.S. 15:441, 442 (1950).
This denial of effective cross-examination as to this defense had the effect of denying the defendant a fair trial on the issue.[2] In cumulation with the error represented by Assignment One, the accused was denied effective cross-examination of a principal state witness against him.
As we recently stated, in similarly reversing when effective cross-examination was curtailed due to unduly restrictive rulings, State v. Giordano, 259 La. 155, 249 So.2d 558, 560 (1971):
"The right of confrontation occupies the status of a paramount and fundamental right indispensable to a fair trial. It is a substantial, substantive and valuable right which assures the accused that he shall have the opportunity to be confronted by the witnesses against him and this includes not only the right to attend the trial and hear the witnesses but also the right to cross-examine them at the trial. It is a constitutional right, not a mere privilege."

Decree
For the reasons assigned, we reverse the conviction and sentence, and we remand this case for a new trial in accordance with law.
Reversed and remanded for a new trial.
SANDERS, C.J., and SUMMERS, J., dissent.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
In my view, the state's objection to the question asked by defendant of the state witness, to-wit: "Would you advise the Court how you came about being a state police narcotics agent?" was correctly sustained by the trial court (Assignment of Error No. 1). The trial judge's ruling did not prohibit the defendant from asking more specific questions to develop bias, interest or corruption. See cases holding that allegation of bias must bear against defendant personally rather than general in nature. State v. Darby, 310 So.2d 547 (La.1975); State v. Howard, 230 La. 327, 88 So.2d 387 (1956); State v. Cullens, 168 La. 976, 123 So. 645 (1929); and State v. Pascal, 147 La. 634, 85 So. 621 (1920). Furthermore, I do not view the questions set forth under Assignment of Error No. 2 as relevant to the defense of entrapment. Hence, the trial court properly sustained the state's objections. In any event, it did not constitute reversible error. La.Code Crim.P. art. 921 (1966). Accordingly, I respectfully dissent.
NOTES
[1] In State v. Pascal, 147 La. 634, 85 So. 621 (1920), a member of a labor union was convicted of a murder committed when the union membership was on strike. The decision upheld rulings by the trial court which prevented introduction of evidence that the prosecution witnesses were nonunion employees of the plant involved in the labor dispute. The ruling seems to have occurred under circumstances excluding evidence of bias of state witnesses offered by the defendant without his having first laid the foundation for it by questioning them as to their bias. See La. R.S. 15:492 (1950), quoted above. If the decision is not distinguishable on such ground, it is inconsistent with the subsequent jurisprudence and the holding of the United States Supreme Court in Davis v. Alaska, cited and quoted from in the body of our opinion above.
[2] The state suggests that the error, if any, was harmless. The basis for the suggestion is that the only defense to which the accused's witnesses testified was an alibi. He and the group of people he was with, allegedly at another location and not at the barbecue pit, testified that he was at a party with them and did not leave the group during the evening.

We find no legal authority to support the proposition that the denial of an opportunity to make one defense recognized by the law is harmless, because (after the denial) the only witnesses called were to support another defense. If for instance the officer's replies supported the defense of entrapment of the seller, we are cited to no authority which would deprive the defendant of his right to have instructions as to this defense (entrapment) considered by the jury, even though such defense is inconsistent with another (alibi) also raised by the evidence.
In any event, the substantial denial of effective cross-examination is in itself regarded as the denial of a fundamental right which cannot be harmless. State v. Giordano and State v. Elias, cited in the majority opinion.