**(123 So. 645)**

No. 29976.

### STATE v. CULLENS.

June 17, 1929.  Rehearing Denied July 8, 1929.

J. W. Elder, of Ruston, S. L. Digby, of Farmersville, and Walter L. Brown, of El Dorado, Ark., for appellant.

Percy Saint, Atty. Gen., W. J. Hammon, Dist. Atty., of Jonesboro, E. R. Schowalter, Asst. Atty. Gen., and H. G. Fields, of Farmersville, for the State.

ROGERS, J. This is an appeal from a conviction of manslaughter on a charge of murder. The homicide occurred on February 2, 1929, and the prosecution is therefore governed by the provisions of the new Criminal Code. There are ten bills of exception in the record, which are numbered from 1 to 10, inclusive. Bills Nos. 1, 5, and 10 are not argued nor insisted upon by appellant, so that it is not necessary for us to notice them. The remaining bills will be discussed in the order in which they appear in the transcript.

Bill No. 2. At the inception of the trial held on April 15, 1929, defendant filed a motion, setting forth that the trial judge was incompetent to try his case because having reached the age of 75 years on April 12, 1929, he automatically vacated, his judicial office

under Const. 1921, art. 7, § 8, and praying that a judge of an adjoining district be named to try the issue raised by the motion. The state objected to defendant's application on numerous grounds. The trial judge sustained the objection and overruled the motion. The bill is from that ruling.

One of the state's objections, which was sustained, was that the title to the office held by the trial judge could not be inquired into collaterally as defendant was attempting to do.

■ There is no question as to the legality of the title of the trial judge up to the date he reached the age of 75 years. He was at that time a judge both de jure and de facto. If thereafter he ceased to be a judge de jure, which is not conceded, nevertheless he was still a judge de facto, and as such his judicial title was not open to a collateral attack. State v. Smith, 153 La. 577, 96 So. 127, and authorities cited. See also, to the same effect, State v. Phillips, 164 La. 597, 114 So. 171. There is therefore no merit in defendant's complaint.

■ Bill No. 3. The basis of this bill is the refusal of the trial judge to sustain defendant's motion to quash the indictment on the ground that the grand and petit juries were illegally drawn. Defendant contends that the jury commission which drew these juries became functus officio on August 1, 1928 when the Criminal Code went into effect, and that no jury commission had been selected and appointed as required by article 175 of the Code. He also contends that the list of 300 names from which the venires of the juries were drawn was illegal, because a new venire list containing the requisite number of names was not prepared subsequent to the adoption of the Criminal Code.

The jury commission which drew the venires of the grand and petit juries was appointed in accordance with the terms of Act 135 of 1898, and in preparing the venire lists it followed the provisions of that statute. It was therefore a jury commission de facto, and its acts in preparing the venire lists were valid. State v. Phillips, referred to supra.

■ Bill No. 4. A state witness having stated that the deceased was marshal of the town of Junction City, where the homicide occurred, defendant objected to the statement on the ground that it was hearsay and not the best evidence and requested that it be stricken out. The trial judge overruled the objection and denied the request. Hence this bill. The trial judge assigns as the cause for his ruling that the witness knew that the deceased was the marshal of the town, and that there was no reason why he should not so testify; that the mayor of the town also testified to the official capacity of the deceased, and that he was not a commissioned officer, but simply elected by the town council; that the indictment does not charge that the deceased was an officer of the law, and his official capacity did not enter into the prosecution. We do not find any error in the ruling. It is plain, from the statement of the trial judge, that the fact that the deceased was marshal of the town in which he was killed was merely an incidental circumstance and not a controlling factor in the case.

■ Bill No. 6. A witness for the state was asked by the prosecuting attorney if, on examination of the body of the deceased, he saw any wounds. The witness was a deputy sheriff, and defendant objected to his testimony on the ground that he was not a medical expert. The objection was overruled, and a bill was reserved. We think the testimony was properly admitted. No expert knowledge or experience whatever was involved in the testimony of the witness. He was merely asked to testify to a physical fact as he saw

it. "A non-expert witness may testify that the deceased was conscious at a certain time, and may describe the wounds he saw on the body." Underhill, Crim. Ev. § 491, p. 695.

Bill No. 7. A witness for the state was asked, on cross-examination, if it was not a fact that about two weeks prior to the homicide the defendant's father had the witness' father arrested on a charge of highway robbery. The question was propounded for the alleged purpose of showing bias or prejudice on the part of the witness against the defendant. The state objected and the objection was sustained, the court ruling that the subject-matter of the inquiry was too remote to have any effect on the feelings of the witness towards the defendant. Our opinion is that the testimony was properly excluded.

It is always competent in a criminal case to show the feeling entertained by a witness towards the person against whom he is called upon to testify. In his comments upon the rule, Mr. Wigmore, says: "The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place. Accurate concrete rules are almost impossible to formulate, and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put, they should not be too remote." Wigmore, Ev., vol. 2, p. 1084, § 949.

If defendant's theory be accepted, nevertheless it does not establish an actual or direct bias or prejudice on the part of the witness against him, but only a circumstance from which bias or prejudice might exist or be inferred. The circumstance, itself, is too remote. The fact that defendant's father caused the arrest of the witness' father on a criminal charge unconnected with the offense for which defendant, himself, is being prosecuted, may be a reason for the existence of an unfriendly feeling on the part of the witness against defendant's father, but it by no means follows that it has also produced in his mind a feeling of hostility towards the defendant. If testimony of this character can be introduced to discredit a witness, the question then recurs: Where is the limit to the introduction of testimony on collateral facts for that purpose? If a quarrel or ill feeling between the parent of a witness and a parent of an accused can be relied on to discredit the testimony of the witness, family quarrels, disputes, and hostilities ad infinitum can be inquired into for the purpose of disqualifying a member of one of the families from giving impartial testimony against a member of the other family. This would result in no end of collateral issues in a criminal prosecution, and it would have a far reaching effect in impairing public confidence in the accuracy and impartiality of human testimony.

Defendant, in support of his contention, cites State v. Joiner, 128 La. 882, 55 So. 560. There is nothing, however, in that case which is contrary to the views we have hereinabove expressed. In the cited case the witness was asked the direct question, if there had not been some hard feelings between his family and the family of the accused on account of the latter's relationship to the former's sister. He answered that he did not know. His further interrogation on the point was stopped by the trial judge himself. This court held that in doing so the trial judge committed an error. The circumstances sought to be inquired into in that case were strongly significant of some feeling of hostility in the mind of the witness towards the defendant growing out of an intimate relationship existing between the defendant himself

and the witness' sister. Therefore the court ruled correctly in holding that the trial judge erred in excluding the testimony.

■■ Bill No. 8. The mayor of the town of Junction City testified as a witness for the state that the deceased was the town marshal and that he was not a drinking man. Defendant, on cross-examination, asked the witness if he had not contributed to a fund for the employment of counsel to assist in his prosecution. The testimony was excluded on objection by the state. The record shows that the witness knew nothing of the facts or circumstances surrounding the homicide and made no attempt to testify concerning them. Under these circumstances, we are unable to see wherein the fact, if it be a fact, that the witness contributed to a fund for the employment of a counsel to assist the state, could have any bearing on the truth or falsity of his testimony. But conceding that from a strictly technical standpoint the trial judge erred in excluding the testimony, nevertheless appeals in criminal cases are not granted merely to test the correctness of the trial judge's ruling, but only to rectify any injury caused thereby. State v. Pearson, 161 La. 332, 108 So. 661. There is nothing in the bill to show, or tending to show, that defendant was injured by the ruling. It is not disputed that the deceased was the marshal of the town of Junction City, nor is any question made concerning his habits of sobriety.

■ Bill No. 9. In opening his argument to the jury the assistant counsel for the state remarked that he had been employed by the municipality of Junction City and citizens interested in the enforcement of the law. Defendant, through his counsel, objected to the remark and reserved a bill thereto. The trial judge was not requested to give any instructions with reference to the remark and therefore gave none. The bill presents nothing

for our consideration. In State v. Poole, 156 La. 434, 100 So. 613, we held that a bill of exception which does not show that the trial judge was asked for a ruling and an exception taken to such ruling, when made, presents nothing for the consideration of an appellate court. This ruling was affirmed in State v. Genna, 163 La. 701, 112 So. 655, and reaffirmed in State v. Glauson, 165 La. 270, 115 So. 484.

Our conclusion is that the record fails to disclose any reversible error.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

O'NIELL, C. J., dissents from the rulings on bills 7 and 8.