On Rehearing
FOURNET, Chief Justice.
When this case was originally before us we annulled and set aside the conviction and sentence of the accused on a bill of information charging her with the theft of $26,000 from her former employer, the Lakeview Theater in New Orleans, and granted a new trial, being of the opinion that the lower court had erred in admitting in evidence, over defendant’s objection, a certain document marked Exhibit S-3, identified as a report[1] made and signed by the witness, Mrs. Mary E. Shelton, a field auditor for Loew’s Inc. (distributor for M-G-M films), in the course of her employment of checking attendance and receipts at various theaters where those films are shown, including the Lakeview Theater.
Upon careful reconsideration we are convinced that we erred in our previous ruling. Conceding, without deciding, that the questioned document was inadmissible, it is not every error committed in the lower court which entitles a defendant in *155 a criminal case to a new trial. State v. Cullens, 168 La. 976, 123 So. 645; State v. Saia, 212 La. 868, 33 So.2d 665. In fact, it is specifically provided in the Code of Criminal Procedure that “No judgment shall be set aside, or a new trial granted by any appellate court of this state, in any criminal case, on the .grounds of * * * the improper admission or rejection of evidence, * * * unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.” LSA-R.S. 15:557, formerly Art. 557 of the Code of Criminal Procedure. (Italics ours.)
According to the record, after the witness had testified at length from memory as well as from notes in her possession covering the serial ticket numbers obtained when she took intermittent readings (i. e., noted the serial number of a ticket being surrendered for admission), that at 6:45 p. m. on April 6th the reading did not agree with her clocked figures and showed that 49 more persons had been admitted than there were tickets recorded as being sold, and that at 7:40 p. m. a second reading indicated that the number had increased, had almost doubled, though she did not remember the exact number,[2] she was handed the questioned document, which she identified as her report covering April 6th, 7th and 8th, and was then permitted to testify, without objection, what this document showed, i. e., that whereas the figures thereon covering April 7th and 8th were in order (i. e., the number of tickets sold was in conformity with the persons present in the theater), the figures for April 6th showed 77 more people in the theater than was indicated by the serial numbers of tickets reportedly sold by the accused, as shown on the latter’s report prepared for the same date and marked Exhibit S-l.[3] However, when the document was offered in evidence, its admission was objected to on the ground that the witness’ testimony was the best evidence and the report was but secondary evidence in the case.
The defendant has failed to point out any violation of her constitutional or statutory rights by the admission of this document, and, in fact, makes no such claim — • the argument of her counsel being simply that the rights of the accused have been *157 prejudiced by its admission. Our examination of the record fully convinces us that no prejudicial error occurred through its reception in evidence, nor did a miscarriage of justice result therefrom. There is nothing in the document, either in figures or statement, that could possibly incriminate the accused; it is simply a report covering the witness’ work over a period of three days, and since the witness had already been allowed to testify, without objection, what it purportedly showed, we fail to appreciate in what respect its admission could possibly prejudice the defendant’s cause.
Bill of Exception No. 2 was reserved when State witness Mrs. Elizabeth Ritter was allowed to answer the question, over defendant’s objection as being hearsay, “Did you have a' conversation with your daughter about $2.50?” It appears that the witness’ daughter, Doris Ritter (who, at the time of the theft, was employed at the Lakeview Theater in charge of the candy counter in the lobby), had testified in this case that on one occasion, which she identified, she was given $2.50 by the accused, who told Doris, in substance, that it was all right for her to keep the money since it came from tickets which had been resold; but that upon reporting the incident to her mother the latter had instructed Doris to return the money to the accused. We find no merit in this bill for, as pointed out by the trial judge in his Per Curiam, the testimony was admitted, not for the purpose of establishing the truth of the statement, but as proof of whether such statement had been made by the daughter to the witness and to corroborate the testimony of the daughter, which had been challenged.
The next four bills, Nos. 3, 4, 5 and 6, were all reserved while the State witness, Dan W. Bonin (19 years of age, and an accomplice in the scheme) was on the stand. Bill No. 3 was reserved when the witness, having described in detail the practice of saving tickets for resale but being unable to give the exact number withheld when the system was begun, was allowed, over defendant’s objection, to give an approximate number. The next bill was reserved when he was allowed to answer a question as to whether, in the course of time, the tickets held out increased or decreased over the original number. The fifth bill was reserved when Bonin was permitted to consult with his attorney, who had been present in the courtroom throughout the trial; and the sixth was reserved when the witness, having said “What do you mean?” in answer to the question “Did anyone else ask you for refunds besides Mrs. Grayson, or ask you for refunds for Mrs. Grayson?”, was permitted, over defendant’s objection, to answer the District Attorney’s next question: “I mean the candy girls or popcorn girls?”
It is the contention of counsel .for. the defendant, in connection with Bill No. 3, that since, in the event of the jury convict-ing the defendant, it was their duty to fix *159 the amount of the theft, to 'allow the witness to state an approximate number of tickets was unfair; he claims that the next objectionable question, the basis of Bill No. 4, added to the injury, since it was in leading form, suggestive of the answer; and that by the question objected to in Bill No. 6, the District Attorney was not only suggesting an answer to the witness but was in fact telling him how he wanted the question answered. In connection with Bill No. 5, the defendant contends that the District Attorney suggested that the witness consult with his attorney; that the witness’ constitutional rights as to self-incrimination had neither been reserved by the witness himself nor by his attorney on the witness’ behalf, and moreover, that the attorney had been in the courtroom during the entire trial even though all witnesses had been excluded under the rule.
We find no error in the rulings of the trial judge in these four instances. As pointed out by the judge in his Per 'Curiam to the third bill, there was ample evidence in the case to establish with certainty that the total amount of money stolen by appellant and the witness Bonin was in excess of $100, which fixed the grade of theft in this case, and in as much as the witness kept no records, he could only estimate the number of tickets held out by him, to be resold by the accused; that the number varied from night to night, according to the business volume, which was larger on Sundays than on week days and also varied according to the drawing power of the picture; that the best period was during the three-day run of the picture “Neptune’s Daughter,” from which Bonin and the accused divided $300. The witness had also testified 'that from the money stolen he had bought a sailboat for $500, an automobile for $150 and another for $50, and had loaned his brother $100, spent money on dates, and estimated the total amount of his share of the continuous theft was $5,000.
The question objected to and forming the basis of Bill No. 4 is not necessarily a leading question, while the one relied on in Bill No. 6 was obviously permissible in view of the witness’ misunderstanding of the prior question. As was aptly pointed out by the trial judge, all such questions are not necessarily objectionable, some discretion being reposed in the trial judge (see LSA-R.S. 15 :373 and the jurisprudence thereunder) ; and his ruling will not be disturbed except in clear cases of abuse resulting in prejudice to the defendant’s cause.
As to Bill of Exception No. 5, it is pertinent to mention that the witness was separately charged in the Criminal District Court with the theft of $13,000, and a civil suit was also pending against him. When the following question was asked him: “Over that entire period of time, after having your memory refreshed [from a written statement previously made by the witness to the police], and after having explained to the jury about the purchase of *161 a sailboat and two automobiles, approximately how much money did you receive from Mrs. Grayson?” the witness addressed himself to the Court and asked: “Do I have to answer that question?” The District Attorney thereupon asked the 'Court if he might permit the witness to consult with his attorney, and the Court asked the witness if he wanted 'to change the answer he had already made, to which the witness replied: “I would like to consult with my attorney.”
The matters complained of in this bill are largely within the sound discretion of the trial judge, whose ruling will not be disturbed unless injury is shown.
As evidenced by the Per 'Curiam to this bill, the trial judge’s appreciation of what took place was that the District Attorney “was acting in good faith and with an honest purpose to do the fair thing,” but had not suggested to the witness, as contended by counsel for the defense, “that he had better consult with his attorney.” The judge pointed out further that “Everything that transpired in this regard transpired in the presence of the jury so that in passing on the credibility of this witness the jury knew that the witness had consulted with his attorney before answering the question.”
The next bill, No. 7, has been abandoned; and Bill No. 8, reserved to the Court’s denial-of a request for a new trial because the verdict was contrary to the law and the evidence, is only a recapitulation of the bills reserved to the rulings discussed above.
For the reasons assigned, the conviction and sentence are affirmed.
HAMITER, J., dissents with written reasons.

. Her exact answer was: “I don’t remember. It seems that there was a plus 79. It had increased, anyway. You see, it had almost doubled.”

. Exhibit S-l, admitted in evidence without objection, is the Daily Box Office Report, signed by the accused, covering April 6, 1952; figures were entered in appropriate columns on the printed form showing (in addition to other data) the serial ticket number (adult and child) when the box office opened, at hourly intervals thereafter, and when the box office closed, as well as the total number of tickets sold and total receipts.