SUMMERS, Justice
(dissenting).
The issue in this case is did the defendant Charles Guidry sell marijuana on November 12,1973.
Dale Albert, the State’s witness, was not a commissioned police officer. He was, however, working with the Regional Narcotics Agency as a paid informer. He had previously been convicted of possession of marijuana and testified to this fact and to his past association with the defendant Guidry and others.
Detective Sergeant Keith Estevens testified that he observed the defendant on the night of November 12, 1973 and followed him from his house to Shelby Hymel’s house. By prearrangement the informer Albert was furnished with money by Es-tevens, and he was also followed to Hy-mel’s house where, having set up the deal with Guidry early that night, the purchase transaction was carried out. Estevens’ observation of the transaction, through binoculars, was from a distance of 300 to 500 yards. Soon thereafter he had a rende-vouz with Albert, who turned over the six lids of marijuana he had just purchased from Guidry.
Albert’s close association with the defendant and his friends existed during October, November and December 1973. It was during this time that Albert, working for the Regional Narcotics Agency, was able to make approximately 35 to 40 drug cases, including the defendants on November 12; 1973. However, in order to maintain a cloak of secrecy over the informer, defendant’s arrest and the arrests of the others, did not occur until April 1974 when a large roundup of all defendants took place. It was at this time that the alleged shooting by the informer took place.
At no time prior to April, however, does the record indicate any hostility between defendant and Albert the informer. The alleged shooting incident, according to defendant, occurred the day before his arrest in April; this was long after the case had been made against the defendant when the alleged hostility could have no bearing upon the informer’s version of the facts which had already been stated to the law enforcement authorities. With these facts firmly established in the record, the trial judge ruled that evidence of the shooting six months after the transaction for which defendant was being tried had no relevancy to the case.
As this Court said in State v. Howard, 230 La. 327, 88 So.2d 387 (1956), interpreting Section 492 of Title 15 of the Revised Statutes:
“If testimony of this character can be introduced to discredit a witness, the question then recurs: Where is the limit to the introduction of testimony on collateral facts for that purpose? If a quarrel or ill feeling between the parent of a witness and a parent of an accused can be relied on to discredit the testimony of the witness, family quarrels, disputes, and hostilities ad infinitum can be inquired into for the purpose of disqualifying a member of one of the families from giving impartial testimony against a member of the other family. This would result in no end of collateral issues in a criminal prosecution, and it would have a far reaching effect in impairing public confidence in the accuracy and impartiality of human testimony.”
In my view the proper interpretation of Section 492 requires that the testimony sought to establish bias must be actual and direct, State v. Cullens, 168 La. 976, 123 So. 645 (1929), in relation to the matter at issue. The testimony sought must also have a close relation in point of time to the offense at issue. State v. McFarlain, 41 La.Ann. 686, 6 So. 728 (1890).
I would not disturb the ruling of the trial judge in the exercise of what I consider to be a sound discretion and upset this jury verdict in a prosecution where *419 the guilt of the defendant is established beyond a reasonable doubt to the satisfaction of the jury, and to my satisfaction also, when all the circumstances are taken into account.
I respectfully dissent.