322 So.2d 119 (1975)
STATE of Louisiana
v.
Jerry JOHNSON.
No. 56065.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*120 Peter J. Compagno, George M. Leppert, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
The grand jury for the Parish of Orleans indicted Jerry Johnson for aggravated rape of a sixteen-year-old girl. Johnson was tried, found guilty without capital punishment,[1] and sentenced to serve the balance of his natural life at hard labor. He appeals.
*121 As the trial occurred in 1972, it was then the practice to reserve bills of exceptions. Three bills are urged on this appeal and are argued in brief.
Some time after ten o'clock on the night of September 16, 1972 the victim was walking at the corner of Camp and Calhoun Streets in the city of New Orleans when Johnson approached her. He grabbed her and pulled a sweater cap over her head threatening her with a gun. He forced her into his Pontiac automobile and drove from the site of the abduction. En route he fired his gun to warn her not to disobey him and to quell her entreaty to remove the cap which was impairing her breathing. After riding for 35 or 40 minutes she was made to get out of the car. In doing so she felt faint and when her legs "started to give way" he threatened her again saying, "You better walk or you are dead." He then forced her to accompany him to a heavily weeded area near the levee on Bayou St. John where he raped her.
As he was taking her back to his automobile, they were approached by two New Orleans police officers who were in the area responding to prowler complaints. While the officers were questioning Johnson, the girl made motions indicating that she wished to speak to the police alone. When she was taken aside by one of the officers she told him what had happened.
Detectives were summoned by the police. Further investigation turned up a blanket in the bushes. In addition Johnson pointed out to the police where he had thrown the revolver. Five bullets and one spent casing were found in defendant's pocket.
Johnson's version of the incident was that the girl was hitchhiking at the corner of Broadway and St. Charles Avenue; that he picked her up; and she consented to the sexual intercourse.
Johnson is a black man. The victim is a white girl. Bill of Exceptions No. 3 was reserved during cross-examination of the victim by defense counsel. When, without further foundation or predicate, defense counsel asked her, ". . . you don't have any prejudices against black people do you?", the State's attorney objected that the question was irrelevant. The objection was sustained by the trial judge with the comment, "I don't see the relevancy at this moment."
Again, without foundation or predicate, in a continuation of the cross-examination, defense counsel asked and the witness responded:
"You have friends in Mobile?"
"Yes, sir."
"Boys and girls?"
"Yes, sir."
"Are they all of the same race?"
When the judge admonished defense counsel that he had just sustained an objection on the same subject, defense counsel argued that he was attempting to test the witness' credibility. He was not permitted to pursue this line of questioning, and he reserved this bill to the rulings.
On this appeal, in brief, for the first time, the defense asserts by way of argument that the questions were designed to establish the bias or prejudice of the prosecuting witness against Negroes. If he had been permitted to establish this fact, he argues, the inference would be clear that the victim's bias and prejudice would never permit her to admit that she had consented to sexual intercourse with a Negro.
Credibility of a witness is attacked generally, by showing that his general reputation for truth or for moral character is bad, or it may be attacked only insofar as his credibility in the case on trial is concerned. La.R.S. 15:490.
Aside from the fact that this attack on the witness' credibility was not based on an attempt to show her general reputation for truth, the relevancy of defense *122 counsel's line of questioning to the victim's credibility was not shown by any foundation or predicate. La.R.S. 15:435. More properly, this was an attempt to impeach the witness as to a collateral fact which also is impermissible. La.R.S. 15:494. Therefore, the trial judge's ruling was correct on the issue as then presented. In his discretion he ruled that defense counsel would not be permitted to raise broad references to the racial issue, for he believed the questioning was designed principally to prejudice the jury.
However, when the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish same. La.R.S. 15:492.
The ruling complained of did not prevent defense counsel from asking more specific questions to develop bias. And it is incompetent to raise the issue on appeal in brief for the first time that the defense was denied the right to question concerning bias or corruption.
The objection here was to the trial judge's denial of improper questions to attack the witness' credibility; there was no objection that defense counsel was denied the right to question concerning bias. Article 841 of the Code of Criminal Procedure in effect at the time of this trial required an objection to a court ruling "at the time of occurrence." The identical requirement is contained in the 1974 amendment to that Article. In addition, the amended version further requires that the party complaining of an erroneous ruling make known to the court "his objections to the action of the court, and the grounds therefor." The requirement that the ground for the objection be made known is implicit in the article before the amendment.
It will not do, therefore, for the defense to urge on appeal for the first time that he was not permitted to show bias when this was not the ground for his objection.
This bill is without merit.
Bill No. 4 was reserved to the refusal of the trial judge to grant a motion for continuance. It is alleged in the motion that defense counsel was not prepared for trial because he was only notified verbally on December 11 that the case would be tried on December 13 and he required additional time to prepare his defense.
Reference to the motion discloses that it was not verified by defendant or his counsel's affidavit as required by Article 707 of the Code of Criminal Procedure.
Further, the allegation of the motion than the defense was not prepared for trial because notice of the trial date was not received until two days befor trial is not well-founded. Johnson was indicted on October 5, 1972. Arraignment was held on October 10 at which time defense counsel appeared with the accused. An application for bill of particulars and motion for oyer were filed by defense counsel on October 30. These motions were heard on November 6. A motion to suppress was fixed for hearing on December 8. At that time the defense was informed that trial would be held on December 13. The hearing was continued to December 11.
Thus, it is apparent that defendant and his counsel had months to prepare for trial. This last minute motion for continuance on the day set for trial is, as the trial judge reasoned, a delaying tactic.
The record is barren of any showing of how more time to prepare for trial would have benefited the defense, or, conversely, how the defendant was prejudiced by not being granted the continuance his attorney sought to obtain for him on the day of trial. State v. Cousin, 307 So.2d 326 (La. 1975). There is, therefore, no merit to this bill.
*123 A motion for a new trial based upon the denial of the motion for continuance was denied and Bill 5 was reserved. Since the issues in the two bills are identical, the reasons assigned in our consideration of Bill 4 apply equally to Bill 5.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] The rape occurred on September 16, 1972, a time when the death penalty could not be imposed because of the decision of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 decided on June 29, 1972. This was also prior to the 1973 enactment of Article 42 of the Criminal Code and Articles 814 and 817 of the Code of Criminal Procedure making the death penalty mandatory for the crime of aggravated rape.