328 So.2d 75 (1976)
STATE of Louisiana, Appellee,
v.
Danny LEWIS, Appellant.
No. 56977.
Supreme Court of Louisiana.
February 23, 1976.
Rehearing Denied March 26, 1976.
*76 J. Michael Small, Gravel, Roy & Burnes, Alexandria, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Eddie Knoll, Dist. Atty., Jeannette T. Knoll, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant Lewis was convicted of distribution of a controlled dangerous substance (phencyclidine), La.R.S. 40:968A, and sentenced to six years at hard labor. Upon his appeal, he relies upon six assignments of error, which present three principal issues.
Context facts
The specific charge, as amplified and limited by a bill of particulars, is that defendant Lewis sold to Herman Rogers (a state trooper working as an undercover agent) three packets of phencyclidine (PHC) for thirty dollars. This transaction took place at a bowling alley near Mansura at about 10:00 p.m.
*77 Preliminary to this transaction, Rogers was driving his vehicle in the company of Francisco and Keno. The latter were drug users; they did not know that Rogers was an undercover police agent. They were looking for "grass" (marijuana), when they saw Lewis parked outside a Dairy Frost with his family.
Rogers parked his car near the defendant Lewis' car. Francisco left the trooper's car, went to and conversed with Lewis, and then, per arrangements then made, both cars met a few minutes later at the bowling alley. At this time, Francisco again approached Lewis, who handed him some packets apparently containing drugs, which Francisco brought back to Rogers for examination, and then returned them to Lewis. Since the manager of the bowling alley opened his door, both cars then left.
By arrangement, both cars drove to a restaurant parking lot to complete the transaction. Once again Francisco went to Lewis' car, obtained three packets (one of a vegetable-like substance (marijuana) in a clear plastic bag, two of a white powdered substance (PHC) wrapped in aluminum foil), obtained thirty dollars from Rogers, returned to Lewis' car and gave the money to him, then returned to Trooper Rogers' car. This first transaction occurred at about 9:35 p.m.
Then, again by pre-arrangement (to obtain more drugs), the Rogers' car returned to the bowling alley parking lot and waited for Lewis to return again. He arrived about twenty minutes later. At that time (10:00 p.m.), again, Francisco went up to the Lewis car, was handed seven packets (three of PHC in aluminum foil and four of marijuana in plastic bags) by Lewis, obtained seventy dollars from Rogers, and gave the seventy dollars to Lewis. Both cars then drove off.
In the present case Lewis is charged only with distribution of the three packets of PHC in the last (10:00 p.m.) transaction. (However, by appropriate notice before the trial, Lewis had been informed that the state intended to introduce into evidence the 9:35 p.m. marijuana-PHC transaction, as well as the sale of marijuana at 10:00 p.m. which was simultaneous with the PHC-distribution presently charged.)
In each of the incidents above-described, the Rogers' car was parked within ten feet of the Lewis car. In each instance, Rogers could see that transfer of packets and money between Lewis and Francisco, although he could not hear the conversation. In each instance, Rogers' part in the transactions was observable by the defendant Lewis. Francisco, testifying for the state (apparently under a plea bargain) described the transactions with Lewis as being for the purpose of transferring the drugs from Lewis to Trooper Rogers in return for the money paid by Rogers.
From the factual evidence above described, the trial jury could infer (as it did) that Lewis was selling (distributing) the drugs to Rogers, using Francisco as the messenger between the two.
Issues of the appeal
The three principal issues raised by the defendant's appeal relate to contentions that: (1) No transaction occurred between the defendant Lewis and Trooper Rogers, as charged; (2) An inculpatory statement was improperly used against the accused; (3) Improper impeachment of a defense witness was allowed.
(1) No transaction occurred between the defendant Lewis and Trooper Rogers
The chief issue raised on this appeal is based upon the contention that the evidence shows that Francisco (not Rogers) purchased the drugs from the defendant Lewis. Based upon this contention, the defendant argues that the present bill of particulars prejudicially misinformed him that the charge was that Lewis distributed and sold the drugs to Rogers.
*78 Based on this contention, the defendant argues that the only evidence admissible was of a sale from the defendant Lewis to Trooper Rogers. Thus, he contends, the evidence of the transfer to Francisco (and from Francisco to Rogers) was inadmissible under the charge, as limited by the bill of particulars to a transaction between Lewis and Rogers. (Assignment of error No. 2). He further contends that he is entitled to a mistrial (Assignment of error No. 3), and at any rate to a continuance (Assignment of error No. 4), because of the difference in the evidence presented by the state from that indicated by the bill of particulars. Finally, he contends (Assignment of error No. 5) that the other offenses (the 9:35 p.m. transaction and the 10:00 p.m. simultaneous marijuana transaction) were inconsistent with the pretrial notice of transactions between the defendant Lewis and Rogers___whereas the evidence introduced was instead of transactions between Lewis and Francisco.
In substance, the defendant thus contends that there were two distinct distributions: (a) that between Lewis and Francisco; (b) that between Francisco and Rogers.
However, as our summary of the evidence indicates, the delivery and distribution, La.R.S. 40:961(9), (15), was between the defendant Lewis to the agent Rogers, even though Francisco himself may have been a principal[1]in the transaction or may himself have been guilty of a distribution or a delivery.
We find no merit to this contention.
(2)Inculpatory statement improperly used against the defendant
By a motion for a bill of particulars, the defendant requested information as to any oral communication, either inculpatory or exculpatory, allegedly made by the defendant to any law enforcement agent. In answer, the state informed the defendant that the defendant did not make any oral admissions or statements to any member of the Avoyelles parish law enforcement agency, but that "at this time, the state is not informed as to whether any statements had been made to law enforcement officers of Rapides parish or elsewhere." (Rogers was assigned to the Rapides and Calcasieu parish state police agencies.)
Shortly after the trial commenced, the prosecutor for the first time learned that the defendant Lewis had made an inculpatory statement to the undercover agent Rogers about a week after the transaction. The statement (about a line of testimony) was to the effect that Lewis and Rogers had run into one another a week after the sale and that Lewis asked Rogers, "How was the stuff?", and Rogers informed him, "It was all right."
Before introducing the statement, the prosecutor at a hearing outside the presence of the jury established that the prosecutor had interviewed the undercover agent for the first time on the day of the trial and had for the first time learned of the statement. The prosecutor also established that the statement was not contained in the investigation report. There is no issue at all that the accurate response in the answer to the bill of particulars was intended to mislead the defendant.
The belated discovery of the inculpatory statement did not result from any intended or bad faith desire by the prosecutor to keep the defendant in the dark as to it. As soon as the existence of the inculpatory statement was discovered, the prosecutor brought it to the attention of the defendant and the trial court outside the presence of the jury. Outside the presence of the jury, *79 he adequately established the reasons for the state's failure to disclose the existence of the statement earlier.
Under the circumstances shown, we find no error in the trial court's permitting introducing of the inculpatory statement. Unlike State v. Boothce, 310 So.2d 826 (La.1975), there was no patent misrepresentation, either deliberate or negligent, nor was the inculpatory statement of such a nature or importance as to constitute the injection of any issue of substantial impact upon the preparation for trial or upon trial tactics.
We therefore do not find reversible merit in this assignment.
(3)Improper impeachment of a defense witness

On cross-examination of a defense witness, the state, over objection, was permitted to ask the witness if his brother had been "busted" (i.e., arrested).[2]
The credibility of a witness himself may not be impeached by asking him whether or not he has been arrested; his impeachment can only be secured by questions as to his prior convictions. La.R.S. 15:495. However, the state contends that the witness can be impeached as to "bias" or "interest" by questioning him as to whether a member of his family (his brother) had been arrested, even though on an offense not related to the charge before the court.[3](The evidence does not show on what grounds the arrest was made, although the argument of counsel in this court indicates that a drug offense was involved.)
The trial court was in error in permitting impeachment of the witness on the ground sought.
Our jurisprudence permits impeachment for any bias or interest of the witness which it might be reasonably inferred might influence his perception or color his testimony. State v. Senegal, 316 So.2d 124 (La.1975); State v. Elias, 229 La. 929, 87 So.2d 132 (1956) (chief prosecuting witness's bias towards members of the accused's family as based upon several incidents); Pugh, Louisiana Evidence Law 110-11 (1974); Comment, Impeachment, 21 Loyola L.Rev. 346, 360-64 (1975).
On the other hand, as these sources also indicate, questions or evidence as to general prejudices or special biases or interests too irrelevant to or too remote from the issues of the case at trial have been considered improper as impeachment. State v. Romano, 320 So.2d 167 (La.1975) (syllabi 3, 4); State v. Darby, 310 So.2d 547 (La.1975); State v. Cullens, 168 La. 976, 123 So. 645 (1929); State v. Morgan, 142 La. 755, 77 So. 588 (1917). See also La.R.S. 15:494: "It is not competent to impeach a witness as to collateral facts or irrelevant matter." In explaining this limitation, the decisions sometimes state that the witness's bias against the opposing party must be direct or personal rather than indirect or general in nature.
In the present instance, a defense witness was asked if his brother had been arrested for an offense not related to the present prosecution.[4]
*80 Any bias that may have resulted from such a circumstance is too remote and involving too collateral an issue for it to be available as impeachment. If the credibility of the witness himself may not be impeached by questions to his own arrest on a non-related charge, La.R.S. 15:495, State v. Romano, 320 So.2d 167 (La.1975) (syllabus 5), similar reasons of policy and fairness prevent impeachment of his credibility by questions or evidence as to any bias that might remotely result from the arrest of a member of his family on charges entirely irrelevant to the present prosecution.
As noted in State v. Cullens, 168 La. 976, 123 So. 645 (1929), similarly refusing to permit impeachment of a witness on circumstances arising out of the arrest of his father, 123 So. 647: "The circumstance, itself, is too remote. The fact that defendant's father caused the arrest of the witness' father on a criminal charge unconnected with the offense for which defendant, himself, is being prosecuted, may be a reason for the existence of an unfriendly feeling on the part of the witness against defendant's father, but it by no means follows that it also produced in his mind a feeling of hostility towards the defendant. If testimony of this character can be introduced to discredit a witness, the question then recurs: Where is the limit to the introduction of testimony on collateral facts for that purpose?"
Therefore, in the present case, it was error to permit impeachment of the defense witness on the ground sought.
Nevertheless, reversible error did not result. The witness (Prevot) himself testified to a collateral issue: Whether, shortly before the offense charged, the defendant Lewis and Officer Rogers had quarrelled at Lewis' home (which Rogers had denied), sought to be proved as evidence of bias on Rogers' part. We are doubtful that the jury believed or disbelieved the evidence of the quarrel because of the short one-line ("Yes, m'am") admission by the witness that his brother had been "busted on two occasions"; or that, whether or not the quarrel took place, it affected the trial jury's ultimate evaluation of the credibility of the police agent as to the drug-distribution of which it found the defendant guilty.
Since the error was not a substantial violation of the constitutional or statutory right of the accused, nor was it prejudicial to the substantial rights of the accused or of a nature likely to cause a miscarriage of justice, it is not cause for reversal of the conviction. La.C.Cr.P. art. 921.

Decree
Accordingly, we affirm the conviction and sentence.
AFFIRMED.
DIXON, J., concurs with reasons.
DENNIS, J., concurs for the reasons stated by DIXON, J.
DIXON, Justice (concurring).
In my opinion there was no error in the attempt to impeach a defense witness by questioning him concerning possible bias because of a previous arrest of his brother.
NOTES
[1] La.R.S. 14:24 provides:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[2] American Heritage Dictionary of the English Language, verbo "bust", lists "To place under arrest" as a meaning of the word. (1969).
[3] La.R.S. 15:492 provides:

"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same." (Italics ours.)
[4] If the arrest had been for an offense connected with the present prosecution, then a different issue may have been presented. Cf. State v. Graziani, 168 La. 297, 121 So. 872 (1929).