337 So.2d 1168 (1976)
STATE of Louisiana, Appellee,
v.
Gregory ROBINSON, Appellant.
No. 57931.
Supreme Court of Louisiana.
October 6, 1976.
*1169 Ralph D. Hillman, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis F. Dugas, Dist. Atty., Walker K. Naquin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of armed robbery, La.R.S. 14:64, and sentenced to fifty years at hard labor. Upon his appeal, he relies upon two assignments of error.
Assignment No. 1 presents the most arguable issue.
The issue raised by it is whether a defense witness may be impeached for particular bias or interest, La.R.S. 15:492, through cross-examination as to whether she herself had been arrested for the crime for which the defendant is tried. Over objection (the predicate being first laid outside the presence of the jury), the trial court permitted the question and the witness' affirmative answer.
The defendant contends that the trial court erred to permit impeachment of his witness by cross-examination of her as to the prior arrest. In so doing, the defendant relies upon the explicit provision of La.R.S. 15:495: "Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness." (Italics ours.)
In so doing, the defendant overlooks that this limitation upon the use of arrests in impeachment applies only to the method of impeaching the credibility of a witness by his prior conviction of a crime. Irrespective of its relevance to the present prosecution, a conviction per se historically is a relevant factor for the jury's evaluation of a witness' credibility. See McCormick on Evidence, Section 43 (2d ed. 1972); Pugh, Louisiana Evidence Law 111-134 (1974).
However, other accepted methods of impeaching the credibility of a witness include: by a prior inconsistent statement, La.R.S. 15:493, McCormick, Sections 34-37, Pugh 104-110; by an attack on the witness' character, La.R.S. 15:490, 491, McCormick, Sections 41, 42; or (relevantly to the present issue) by showing that the witness is biased or interested in the special case on trial because of partiality or of any acts, relationships, or motives reasonably likely to produce it, La.R.S. 15:492, Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), McCormick, Section 40, Pugh 110-11.
With regard to this latter method of impeachment, the decisions of Louisiana jurisprudence *1170 have generally permitted full scope of cross-examination in the interests of exposing, for jury evaluation, any bias or interest of the witness which might influence his perceptions or color his testimony. See, e.g.: State v. Guidry, 319 So.2d 415 (La.1975); State v. Senegal, 316 So.2d 124 (La.1975); State v. Chambers, 263 La. 1080, 270 So.2d 514 (1972); State v. Lewis, 236 La. 473, 108 So.2d 93 (1959); State v. Elias, 229 La. 929, 87 So.2d 132 (1956); Pugh, Louisiana Evidence Law 110-11 (1974).
On the other hand, the bias permitted to be exposed must be personal against the defendant rather than general in nature, and the interest must be particular as to the case; therefore, general prejudices or special biases or interests too irrelevant to or too remote to the issues of the case at trial have been considered improper as impeachment for this purpose. State v. Lewis, 328 So.2d 75 (La.1976) (arrest for similar but unrelated offense); State v. Johnson, 322 So.2d 119 (La.1975); State v. Darby, 310 So.2d 547 (La.1975).
In the present case the question of the witness as to her arrest related to her particular interest in the case then on trial.
The question occurred in the following context:
The armed robbery of the convenience store occurred at 12:20 p.m. The defendant Robinson and his companion Jones were identified by two or three witnesses as going into and leaving the store at about that time. One of these state witnesses was Shirley Jones, who lived in the second floor apartment in the house directly across the street from the store.
The defense witness, Sherill Henderson, lived on the first floor of the house across the street from the store. She testified that Shirley Jones had left for the welfare office about 11:00 a.m. and had not returned until 2:00 p.m. or thereafter. Miss Henderson was a step-sister of Jones, whom Jones and Robinson had visited on other occasions in her apartment.
In the present case, the state witness Miss Shirley Jones had seen Rodney Jones and the defendant Robinson go into the store (just before the robbery and then had finished dressing). About ten minutes later, she stopped by Miss Henderson's apartment on her way out of the building and saw Jones there (but not Robinson). After the robbery, Rodney Jones was found by the police on the porch adjacent to her apartment. Another witness had seen Robinson and Jones go to her house after the robbery.
The objected-to question concerned whether Miss Henderson had been arrested for participation in the armed robbery. (The objection to the question was made in the predicate laid outside the presence of the jury.) She replied: "Yes. It was just an investigation. I never was charged for it."
The cross-examination as to the arrest was proper to show her particular interest in the special case before the court. Because of her close association with Rodney Jones (one of the two identified robbers, the other being the defendant Robinson), she had a special interest in proving that neither Jones nor his companion Robinson had committed the robbery. If they were innocent, she was not subject to suspicion of participating with them in the crime. If, on the other hand, they were guilty, her close association with one of the robbers immediately after the crime arguably subjected her to reasonable suspicion that she had furnished sanctuary immediately after the robbery to one of the robbers in her apartment across the street from the store robbed.
Similarly, in State v. Lewis, 236 La. 473, 108 So.2d 93 (1959), we held, in reversing a conviction for the failure to allow such cross-examination, that the defense could cross-examine a state witness as to whether he had been indicted for the same offense as that with which the defendant was charged. We held that the defendant could properly cross-examine as to the indictment for the offense tried in order to show interest of the witness, i.e., a promise or hope of leniency for him if he testified for the prosecution.
*1171 In so holding, we pointed that the cross-examination as to an arrest or indictment for the same offense may be permissible to show bias, interest, or corruption (if the facts reasonably indicate such relevance), despite the provisions of La.R.S. 15:495 prohibiting use of indictments or arrest in impeachment of a witness when impeachment is based upon the witness's prior conviction.
In approving this result, Professor Pugh noted, reprinted at Pugh, Louisiana Evidence Law 134 (1974): "Here, the fact of the witness' arrest was not offered as tending to show that the witness was a `bad man' and therefore unworthy of belief (which is prohibited by the 1952 amendment to Article [La.R.S.] 495), but for a completely different reasonas tending to show bias, interest, or corruption. This method of impeachment is clearly recognized by Article [La.R.S.] 492, and it is submitted that the 1952 amendment to Article [La.R.S.] 495 was not intended to limit the scope of Article [La.R.S.] 492."
Thus, La.R.S. 15:495 permits cross-examination or evidence of a witness as to a conviction, regardless of when or what for, as theoretically relevant for jury evaluation of the witness' credibility. However, when impeachment is sought on this ground, the mere fact that a witness has been previously arrested or indicted is not regarded as logically relevant to this purpose, being a mere accusation. See Pugh, Louisiana Evidence Law 133-34 (1974).
However, the present cross-examination as to the arrest was not within the prohibition of such statute, since it was independently relevant to show particular bias or interest in the special case before the court. It was thus permissible impeachment under La.R.S. 15:492, which recognizes another and a different basis of impeachment than that of La.R.S. 15:495.
Assignment 2 complains of the denial of a motion for a new trial. It was based upon the discovery of new and material evidence, being the witness Gaynelle Duncan.
At the hearing on the motion, Miss Duncan testified that she and Shirley Jones (the state witness) had been together from 10:45 to 12:00, at which time the two women rode together to the welfare office. Two other ladies corroborated her testimony that she and Shirley Jones had left for the welfare office at 12:00 p.m. (The effect of this testimony was to dispute the trial testimony of Shirley Jones that she had been in her apartment at the time of the robbery, when she testified that she saw Robinson and his companion enter the store.)
In refusing the new trial, the trial court pointed out that the names of two of the "new" witnesses had been brought out during the trial, as well as certain evidence which brought into question the reliability of their testimony as to the times involved.
In deciding a motion for a new trial based on newly discovered evidence, the trial judge is accorded considerable discretion in evaluating the potential impact of the testimony upon the verdict, if it had been offered at the trial, and its reliability. His ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. State v. Porter, 330 So.2d 281 (La.1976); State v. Phanor, 325 So.2d 579 (La.1976); State v. Randolph, 275 So.2d 174 (La.1973); State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). We find none here.

Decree
We affirm the conviction and sentence.
AFFIRMED.